IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (CINCINNATI)

| | | |
|---|---|---|
| **NORTHEAST OHIO COALITION** | : | **Case No. 1:10-cv-820** |
| **FOR THE HOMELESS** | : | |
| **3631 Perkins Ave., #3A-3** | : | **Judge Susan J. Dlott** |
| **Cleveland, OH 44114** | : | |
| | : | |
| **and** | : | |
| | : | **COMPLAINT** |
| **OHIO DEMOCRATIC PARTY** | : | |
| **340 East Fulton Street** | : | |
| **Columbus, OH 43215** | : | |
| | : | |
|       **Intervenor-Plaintiffs,** | : | |
| | : | |
|    **v.** | : | |
| | : | |
| **HAMILTON COUNTY BOARD OF** | : | |
| **ELECTIONS** | : | |
| **804 Broadway** | : | |
| **Cincinnati, OH 45202** | : | |
| | : | |
| **and** | : | |
| | : | |
| **ALEX TRIANTAFILOU, Chair of** | : | |
| **Hamilton County Board of Elections,** | : | |
| **and members TIMOTHY BURKE,** | : | |
| **CALEB FAUX and CHARLES** | : | |
| **"CHIP" GERHARDT, III** | : | |
| **804 Broadway** | : | |
| **Cincinnati, OH 45202** | : | |
| | : | |
| *All sued in their official capacities as* | : | |
| *Chair and members of the Hamilton* | : | |
| *County Board of Elections,* | : | |
| | : | |
|       **Defendants.** | : | |

1.      This is a civil rights action in which Plaintiff Hunter and Intervenor-Plaintiffs

seek an order requiring Defendants, among other things, to count provisional ballots of registered

voters who voted at the wrong precinct in Hamilton County due solely to poll worker error.



EXHIBIT
A

2.      Intervenor-Plaintiffs Northeast Ohio Coalition for the Homeless ("NEOCH") and the Ohio Democratic Party ("ODP") also seek an order requiring Defendants to comply with the terms of the Consent Decree entered on April 19, 2010 in the case of *Northeast Ohio Coalition for the Homeless v. Brunner*, Case No. 06-CV-896 (S.D. Ohio) (Marbley, J.) and Secretary of State Brunner's Directive 2010-74, with respect to the provisional ballots at issue in this case.

## JURISDICTION AND VENUE

3.      This case arises under the Constitution and laws of the United States.  This Court has subject-matter jurisdiction of this action under 28 U.S.C. §§ 1331 and 1343(3) & (4).  This suit is authorized by 42 U.S.C. § 1983.  This Court has jurisdiction to grant both declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

4.      Venue in this district and division is proper under 28 U.S.C. § 1391(b) because this action is predicated upon a federal question and a substantial part of the events or omissions giving rise to the claims alleged in this complaint have occurred, and will continue to occur, in this district.

## THE PARTIES

5.      Intervenor-Plaintiff NEOCH is a non-profit charitable organization operating in the City of Cleveland that provides services to approximately 25,000 homeless people each year.  NEOCH has 40-50 members who are currently homeless.  NEOCH provides services for homeless people, including its homeless members, in the areas of housing, health care, economic justice and civil rights.  As stated in NEOCH's Homeless Advocacy Initiatives, Goals for 2005-2010, one of NEOCH's civil rights initiatives is to "work to assure that all homeless people are registered to vote, and reduce barriers to registering and homeless people actually voting."  NEOCH has helped hundreds of homeless people, including some of its homeless members,

2

register to vote and obtain the necessary identification to register to vote. NEOCH is the lead

plaintiff in the case captioned *Northeast Ohio Coalition for the Homeless v. Brunner*, Case No.

06-CV-896 (S.D. Ohio) (Marbley, J.) ("*NEOCH* case") and a party to the Consent Decree.

6. Intervenor-Plaintiff ODP is a political party in the State of Ohio. ODP is an

intervenor-plaintiff in the *NEOCH* case and a party to the Consent Decree.

7. Plaintiff Tracie Hunter is a resident of Hamilton County, Ohio. She is registered

to vote in Hamilton County, Ohio. She is a candidate for Hamilton County Juvenile Court Judge

in the November 2, 2010 general election.

8. Defendant Hamilton County Board of Elections ("Board") is responsible for

determining which provisional ballots shall be approved and therefore counted, and which shall

be rejected, in the general election held in November 2010.

9. The chair and members of the Hamilton County Board of Elections ("Members")

are responsible for determining which provisional which provisional ballots shall be approved

and therefore counted, and which shall be rejected, in the general election held in November

2010. The Members are sued solely in their official capacities.

## FACTUAL ALLEGATIONS

10. The Board rejected 849 provisional ballots because the voter voted in the wrong

precinct. Some of these ballots were cast in the correct polling location but the wrong precinct.

The Board did not separate out which of these ballots fell into that category. Nor did the Board

investigate whether there was poll worker error.

11. NEOCH is the lead plaintiff in the *NEOCH* case. ODP is an intervenor-plaintiff

in that action. Both NEOCH and ODP are parties to the Consent Decree entered in that case on

April 19, 2010 (copy attached as Exhibit 1).

12.     The Consent Decree provides, in relevant part:

> b.  Boards of Elections may not reject a provisional ballot cast by a
> voter, who uses only the last four digits of his or her social security
> number as identification, for any of the following reasons:
>
> ****
>
> v.     The voter cast his or her provisional ballot in the wrong
> precinct, but in the correct polling place, for reasons attributable to
> poll worker error.  (Ex. 1 at 4).

13.     In Directive 2010-74 (copy attached as Exhibit 2), Secretary of State Brunner

provided non-exclusive examples of "poll worker error" as used in the Consent Decree.  These

examples include provisional ballots cast in the wrong precinct but the right polling place:

> Another example of poll worker error is where the provisional
> ballot affirmation envelope (SOS Form 12-B) contains notations
> indicating that a poll worker directed the voter to the wrong
> precinct at a polling location containing multiple precincts.
> Because it is a poll worker's duty to ensure that the voter is
> directed to the correct precinct, these notations provide objective
> evidence that the poll worker did not properly or to the fullest
> extent required carry out his or her Election Day duties.  Similarly,
> if a board of elections finds multiple provisional ballots voted in
> the correct polling location but wrong precinct, it should, either in
> writing, with written responses from the poll workers, or at a
> public meeting of the board, question the poll workers in that
> polling location to determine whether they followed the board's
> instructions for ensuring that voters were directed to the correct
> precinct.  (Ex. 2 at 12).

14.     On information and belief, at least some of the 849 provisional ballots that were

rejected by the Board should have been approved, and counted, under the terms of the Consent

Decree and/or Directive 2010-74.

## COUNT ONE
## (Violation of the Consent Decree)

15.     Intervenor-Plaintiffs incorporate by reference paragraphs 1-12 as if fully rewritten

here.

4

16.     Defendants have violated the terms of the Consent Decree.

17.     Defendants should be enjoined from violating the Consent Decree and ordered to process the 849 challenged provisional ballots under the terms of the Consent Decree and Directive 2010-74.

18.     Intervenor-Plaintiffs are entitled to their attorneys fees and costs incurred in enforcing the terms of the Consent Decree.

### COUNT TWO
**(Violation of Equal Protection and Due Process – 42 U.S.C. § 1983)**

19.     Intervenor-Plaintiffs incorporate by reference paragraphs 1-16 as if fully rewritten here.

20.     Defendants, acting under color of law, have violated rights secured to Intervenor-Plaintiffs and the voters who cast the 849 provisional ballots at issue in this lawsuit by the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution.

**WHEREFORE,** Intervenor-Plaintiffs asks that this Court enter judgment in its favor and demands the following relief:

A.     Declaratory relief in the form of a declaration that Defendants have violated the Consent Decree, Directive 2010-74 and/or the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution;

B.     Preliminary and permanent injunctive relief that requires Defendants to process the 849 provisional ballots at issue in this case according to the terms of the Consent Decree, Directive 2010-74 and/or the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution;

C.      Intervenor-Plaintiffs' reasonable attorneys' fees and costs; and

D.      Any other relief which this Court deems just and equitable.

Respectfully submitted,


 s/ Caroline H. Gentry
Caroline H. Gentry, Trial Attorney (0066138)
PORTER, WRIGHT, MORRIS & ARTHUR LLP
One South Main Street, Suite 1600
Dayton, OH  45402
(937) 449-6748 / (937) 449-6820 Fax
Email:  cgentry@porterwright.com

and

Subodh Chandra (0069233)
THE CHANDRA LAW FIRM, LLC
1265 W. 6th Street, Suite 400
Cleveland, OH  44113-1326
(216) 578-1700 / (216) 578-1800 Fax
Email:  Subodh.Chandra@StanfordAlumni.org

and

H. Ritchey Hollenbaugh (0001072)
CARLILE PATCHEN & MURPHY LLP
366 East Broad Street
Columbus, Ohio 43215
(614) 228-6135 / (614) 221-0216 Fax
hrh@cpmlaw.com

*Attorneys for Proposed Intervenor Northeast Ohio
Coalition for the Homeless*

and

  s/ Donald J. McTigue

Donald J. McTigue, Trial Attorney (0022849)
Mark A. McGinnis (0076275)
MCTIGUE LAW GROUP
550 East Walnut Street
Columbus, OH 43215
(614) 263-7000 / (614) 263-7078 Fax
mctiguelaw@rrohio.com

*Attorneys for Proposed Intervenor*
*Ohio Democratic Party*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| THE NORTHEAST OHIO COALITION FOR THE HOMELESS, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> JENNIFER BRUNNER, in her official capacity as Secretary of State of Ohio, <br><br> Defendant. <br><br> STATE OF OHIO <br><br> Intervenor-Defendant | Case No. C2-06-896 <br><br> Judge Algenon Marbley |

## CONSENT DECREE

Plaintiffs Northeast Ohio Coalition for the Homeless ("NEOCH"), the Columbus Coalition for the Homeless ("CCH"), (the "Coalitions"), Kyle Wangler ("the Individual Plaintiff") and the Service Employees International Union, Local 1199 ("SEIU") have brought this action against Defendant Secretary of State and Intervenor-Defendant State of Ohio (collectively "Defendants"). In addition, Plaintiff-Intervenor Ohio Democratic Party has filed a Complaint in this action against the Defendants with respect to provisional ballot issues.

Plaintiffs have alleged that the Individual Plaintiff and some of the Coalitions' members lack the identification required by the Ohio Voter ID laws to cast a regular ballot on Election Day and, further, that the Ohio Provisional Ballot Laws have been and will be applied differently and unequally by Ohio's 88 Boards of Elections. Plaintiffs allege that they are therefore deprived of the equal protection of the laws and due process. Plaintiffs have further alleged that the Ohio Voter ID Laws impose an unlawful poll tax because the State of Ohio does not provide free State of Ohio identification cards and because homeless voters are unable to provide other acceptable forms of identification since such identification must contain proof of a current address.

The Court granted in part and denied in part the Defendants' motion to dismiss the claims in Plaintiffs' initial Complaint. The remaining claims in that Complaint, as well as the new claims in the Supplemental Complaint, are brought solely under federal law, namely, under the Equal Protection and Due Process Clauses of the Fourteenth Amendment and the Twenty-Fourth Amendment to the United States Constitution.



EXHIBIT

The parties, desiring that this action be settled by an appropriate Consent Decree ("Decree") and without the burden of protracted litigation, agree to the jurisdiction of this Court over the parties and the subject matter of this action. Subject to this Court's approval of this Decree, and subject to the continuing validity of this Decree if it or its terms are challenged in any other court, the parties waive a hearing and findings of fact and conclusions of law on all issues, and further agree to the entry of this Decree as final and binding among and between themselves as to the issues raised in the Plaintiffs' Complaint and Supplemental Complaint, and the matters resolved in this Decree.

This Decree, being entered with the consent of the parties, shall in no way constitute an adjudication or finding on the merits of Case No. 2:06-CV-896, nor be construed as an admission by the Defendants of any wrongdoing or violation of any applicable federal or state law or regulation.

In resolution of this action, the parties hereby AGREE to, and the Court expressly APPROVES, ENTERS and ORDERS, the following:

## I.    PURPOSES OF THIS DECREE

1.    The purposes of this Decree are to ensure that:

    a. The fundamental right to vote is fully protected for registered and qualified voters who lack the identification required by the Ohio Voter ID Laws, including indigent and homeless voters—such as the Individual Plaintiffs and certain members of the Coalitions—who do not have a current address and cannot readily purchase a State of Ohio ID Card;

    b. These voters are not required to purchase identification as a condition to exercising their fundamental right to vote and have their vote be counted;

    c. The legal votes cast by these voters will be counted even if they are cast by provisional ballot on Election Day;

    d. These voters will not be deprived of their fundamental right to vote because of differing interpretations and applications of the Provisional Ballot Laws by Ohio's 88 Boards of Elections;

    e. These voters will not be deprived of their fundamental right to vote because of failures by poll workers to follow Ohio law. For purposes of this Decree poll worker error will not be presumed, but must be demonstrated through evidence; and

    f. All legal votes that are cast by indigent and homeless voters on Election Day will be counted.

**II.    PARTIES BOUND BY DECREE.**

2.    This Order shall be binding upon the Defendants and their employees, agents and representatives.  The Secretary of State will issue Directives to the Boards of Elections to follow this Decree, and will use her best efforts to enforce the Decree and all related Directives if put on notice of any alleged violations.

3.    The parties recognize that Article VI, Clause 2 of the United States Constitution provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof; … shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

**III.    GENERAL INJUNCTIVE RELIEF.**

4.    The Court ADOPTS and annexes hereafter Directive 2008-80 as an Order of this Court.

5.    Defendant Secretary of State, her agents, employees and representatives will instruct Ohio's county Boards of Elections to adhere to the following rules regarding the casting and counting of provisional ballots for persons without identification other than a social security number:

    a.    Boards of Elections must count the provisional ballot cast by a voter using only the last four digits of his or her social security number as identification if all of the following conditions are met:

        i.    The individual who cast the provisional ballot is registered to vote;

        ii.    The individual is eligible to cast a ballot in the precinct and for the election in which the individual cast the provisional ballot;

        iii.    The provisional ballot affirmation includes a statement that the individual is registered to vote in the precinct in which the provisional ballot was cast and a statement that the individual is eligible to vote in the election in which the provisional ballot was cast;

        iv.    The individual's name and signature appear in the correct place on the provisional ballot affirmation form, unless the voter declined to execute the affirmation and the poll workers complied with their statutory duties under R.C. 3505.182 and R.C. 3505.181(B)(6) when a voter declines to execute the affirmation;

        v.    The signature of the voter substantially conforms to the signature contained in the Board of Election's records for that voter;

Case: 2:06-cv-00896-ALM-TPK Doc #: 210 Filed: 04/19/10 Page: 4 of 6 PAGEID #: 4973

      vi.   The provisional ballot affirmation includes the last four digits of that voter's social security number, which is not found to be invalid;

     vii.   The individual's right to vote was not successfully challenged;

   viii.   The individual did not already cast a ballot for the election in which the individual cast the provisional ballot; and

     ix.   Pursuant to R.C. 3505.183(B)(2), the Board of Elections determines that, in addition to the information included on the affirmation, there is no additional information for determining ballot validity provided by the provisional voter or to the Board of Elections during the ten days after the day of the election that casts doubt on the validity of the ballot or the individual's eligibility to vote.

b.   Boards of Elections may not reject a provisional ballot cast by a voter, who uses only the last four digits of his or her social security number as identification, for any of the following reasons:

      i.   The voter provided the last four digits of a Social Security Number but did not provide a current driver's license, state issued identification, or other document which serves as identification under Ohio law;

     ii.   The voter did not provide a date of birth;

    iii.   The voter did not provide an address that is tied to a house, apartment or other dwelling provided that the voter indicated that he or she resides at a non-building location, including but not limited to a street corner, alley or highway overpass located in the precinct in which the voter seeks to cast a ballot and that the non-building location qualifies as the individual's voting residence under R.C. 3503.02;

    iv.   The voter indicated that he or she is homeless;

     v.   The voter cast his or her provisional ballot in the wrong precinct, but in the correct polling place, for reasons attributable to poll worker error;

    vi.   The voter did not complete or properly complete and/or sign the provisional ballot application for reasons attributable to poll worker error; or

   vii.   The poll worker did not complete or properly complete and/or sign the provisional ballot application witness line and/or the

provisional ballot affirmation form, except for reasons permitted by the governing statutes.

c.  Boards of Elections must observe the following rules regarding the delegation of processing provisional ballots, and determining their validity, to board staff:

    i.  Ultimately, the members of Boards of Elections must determine the validity of all votes cast in an election and must certify the results of all elections.  However, nothing in Ohio law requires that the members of a Board of Elections must personally complete all tasks associated with preparing for that certification.

    ii.  Thus, Boards of Elections may, under a policy adopted by the Board, delegate the processing and some aspects of counting provisional ballots to board staff.  Such processing must be done in bipartisan teams.

    iii.  If a Board of Elections delegates the processing of provisional ballots, it must first adopt a policy setting forth procedures for the processing of provisional ballots.  Under that policy, board staff responsible for processing provisional ballots must make a recommendation to the Board as to the eligibility of each provisional ballot cast in the county, either on an individual basis, or as to groups or categories of similarly situated provisional ballots.

    iv.  Ultimately, the members of Board of Elections must determine the eligibility or ineligibility of all provisional ballots cast within the county in accordance with Ohio law.  Boards may not delegate this task.

    v.  Each Board of Elections must then cause the ballots to be counted by board staff, and must include the tabulation of that count in its official canvass of the election results and, to the extent required, its certification of the election results to the Secretary of State.

## IV.  IMPLEMENTATION.

6.  Defendant Secretary of State shall issue a Directive to all Boards of Elections that sets forth the text of the injunctive relief described above.

7.  Before every primary and general election, Defendant Secretary of State shall remind Boards of Elections that they must comply with the injunctive relief described above and shall distribute the text of the injunctive relief to all Board Members, Directors and Deputy Directors.

8.  In every location where provisional ballots are processed after an election, Boards of Elections shall post a notice in a conspicuous place that contains the text of the injunctive relief described above in large, capitalized and bolded type.

**V.    CONTINUING VALIDITY.**

9.  This Decree shall remain in effect until June 30, 2013.

10. If the State of Ohio repeals or amends any portion of the Ohio Voter ID Laws or Provisional Ballot Laws that are identified in the Complaint, Defendant Secretary of State shall file a notice with the Court within 30 days of passage of the law regarding such changes.  Those changes in Ohio law will supersede this consent decree and this decree will be automatically amended by operation of law to include those statutory changes.

11. Any of the parties may file a motion with the Court to modify, extend or terminate this Decree for good cause shown.

**VI.    MISCELLANEOUS PROVISIONS.**

12. Within sixty (60) days after entry of this Decree, Defendant Secretary of State shall pay to counsel for Plaintiffs the attorneys' fees that were previously awarded by this Court, as follows:  $321,942.15.51 to Porter Wright Morris & Arthur LLP, $99,722.58 to Carlile Patchen & Murphy LLP, and $82,749.38 to The Chandra Law Firm, LLC.

IT IS SO ORDERED.

UNITED STATES DISTRICT JUDGE



**JENNIFER BRUNNER**
OHIO SECRETARY OF STATE

180 EAST BROAD STREET, 16TH FLOOR
COLUMBUS, OHIO 43215 USA
TEL: 1-877-767-6446   FAX: 1-614-644-0649
WWW.SOS.STATE.OH.US

**DIRECTIVE 2008-80**
September 5, 2008

TO:   ALL COUNTY BOARDS OF ELECTIONS
       MEMBERS, DIRECTORS, DEPUTY DIRECTORS

RE:   Voter Identification Requirements

This directive is intended to clarify Ohio's voter identification requirements as applied by Ohio's boards of elections, Ohio election officials and poll workers in Ohio. This directive supersedes Section I of Directive 2007-06.

All boards of elections shall implement the instructions provided in this directive.

The Secretary of State's office has incorporated the instructions contained in this directive in its Poll Worker Manual of Instructions and its Poll Worker Quick Reference Guide, which is provided to boards of elections and referenced in Directive 2008-77. Presiding judges must be provided with a copy of this directive, and the Secretary of State's office offers further assistance to boards of elections in interpreting or applying this directive through the elections attorneys at the Secretary of State's office assigned to county boards of elections.

**Election Day Regular Voting ID Requirements**

R.C. 3505.18 requires every voter, upon appearing at the polling place to vote on Election Day, to announce his or her full name and current address and *provide proof of the voter's identity.* The forms of identification that may be used by a voter who appears at a polling place to vote on an Election Day include:

1. His or her current and valid Ohio driver's license; or
2. His or her current and valid photo identification card issued by the State of Ohio or the United States government; or
3. His or her military identification ("military ID"); or
4. An original or copy of a current utility bill; or
5. An original or copy of a current bank statement; or
6. An original or copy of a current paycheck; or
7. An original or copy of a current government check; or
8. An original or copy of a current other government document.

(NOTE: An Ohio driver's license or Ohio issued photo identification card may be used that does not contain the voter's address appearing in the records of the board of elections. In such case, a poll worker must record the last 4 digits of the voter's driver's license or Ohio ID card number in polling place records as instructed by the board of elections. Also, beginning with the November 2008 general election, pursuant to Am. Sub. H.B. 562, military ID's will no longer have to contain the name or address of the voter offering the military ID as identification; poll workers must, however, be able to ascertain that the person offering the military ID as identification is the person he or she purports to be and has the qualifications to vote in the election in question.)

*Please see the definitions section of this Directive for clarification on such terms as "current" and for more information about the above forms of identification.*

If an elector appearing on an Election Day to vote in person does not have, or fails or refuses to provide, any of the acceptable forms of proof of identity outlined above, that elector may cast a provisional ballot pursuant to R.C. 3505.181. A discussion of instructions for provisional voting appears in Directive 2008-81.

*Please see addendum No. 1 to this directive. That addendum is a flow chart that poll workers may use to assist them in determining whether a particular voter has provided sufficient identification to vote a regular ballot or must vote a provisional ballot. Four copies of this addendum must be included in the precinct/polling location kit for Election Day.*

## Absentee ("Early") Voting ID Requirements

Any qualified Ohio elector whose current voting residence address is the address appearing in the records of the board of elections for that voter may request an absent voter's ballot without stating a reason. A detailed discussion of absentee voting appears in Directive 2008-82.

The Ohio General Assembly has implemented somewhat different and perhaps more simplified voter ID requirements for absentee voting (whether by mail or in person) than for Election Day voting. Absentee voters are required to provide ID at two distinct points in the voting process. First, all absentee voters must provide ID at the time they apply for their absentee ballots. Second, all absentee voters must also provide ID at the time they vote and return their absentee ballots.

A voter is **not** required to provide identical forms of required ID at both points in time discussed above as long as both forms of ID provided are acceptable forms of ID as enumerated below. The forms of ID that may be used by an **absentee voter** include:

1. His or her Ohio driver's license number; or
2. The last four digits of his or her Social Security number; or
3. A copy of his or her current and valid Ohio driver's license; or
4. A copy of his or her photo identification card issued by the State of Ohio or the United States government; or
5. A copy of his or her a military identification; or
6. An original or copy of a utility bill; or

7.  An original or copy of a bank statement; or
8.  An original or copy of a paycheck; or
9.  An original or copy of a government check; or
10. An original or copy of another government document.

(NOTE: Beginning with the November 2008 general election, pursuant to Am. Sub. H.B. 562, military ID's will no longer have to contain the name or address of the voter offering the military ID as identification; poll workers must, however, be able to ascertain that the person offering the military ID as identification is the person he or she purports to be and has the qualifications to vote in the election in question.)

If an elector or voter who desires to vote absentee provides the identification information contained in numbers 1 or 2 above, he or she is **not** required also to provide any of the identification documentation described in numbers 3 through 10 above.

***Please see the definitions section of this Directive for clarification on such terms as "current" and for more information about the above forms of identification.***

## Definitions Relating to Voter ID

Am. Sub. H.B. 3 did not define many of the terms used in the voter ID requirements contained in that law. To ensure uniform application of those requirements throughout Ohio, and under my authority under R.C. 3501.05, the following terms are defined, as used in relation to voter ID:

### Current

"Current" means the document was issued on a date within one year immediately preceding the date of the election at which the voter seeks to vote, or has on it an expiration date which has not passed as of the date of the election in which the voter seeks to vote.

### Conform

For the purposes of verifying the identity of the voter by **name**, "conform" means that the document shall contain the same last name and the same first name or derivative of the first name as the first and last names appearing in the poll list or signature poll book. When a middle name or initial can be matched, the election official or poll worker should also verify the middle name or initial. Minor misspellings shall not preclude the use of a proffered ID for purposes of voting.

For the purposes of verifying the identity of the voter by **address**, "conform" does not mean an exact match, but rather, the form and content of the address can reasonably be determined to match the form and content of the address appearing in the poll list or signature poll book.

### Photo identification

R.C. 3501.01(AA) defines "photo identification" and requires ALL of the following:

- The photo identification has been issued by either the government of the **United States or the State of Ohio**.  Drivers' licenses and photo ID cards from other states or countries are not acceptable forms of identification.
- The photo identification shows a **photograph** of the individual to whom it was issued, and the photograph appears to be the person who has presented the photo ID.
- The photo identification includes an **expiration date that has not passed**.
- The photo identification shows the **name of the individual** to whom it was issued, which shall conform to the name in the poll list or signature poll book for the person presenting the photo ID.
- The photo identification shows the **current address** of the individual to whom it was issued, which shall conform to the address in the poll list or signature poll book. **There are two exceptions, however. No voter shall be denied a regular ballot solely because his or her military ID or his or her Ohio driver's license or ID card does not provide his or her current address, or the address on his or her Ohio driver's license or ID card does not match that in the poll list or signature poll book.** Note, in this case, the poll worker must accept one of these forms of photo ID to allow the individual to vote, but must record the last four digits of a driver's license or state ID number if the address on the ID does not match the address for the voter appearing in the poll list or signature poll book.

**Please note that there are two numbers on an Ohio driver's license.** The **required number** is the number located on the **left hand side** of the ID under the phrase "LICENSE NO." The correct number actually begins with letters.  In contrast, the number located above the picture on an Ohio driver's license number is not the driver's license number and cannot be used to verify the identity of a voter.

If an **absentee voter** provides the number above his or her picture and not the driver's license number, the board must notify the voter of such error by telephone or in writing, within two business days of receiving the application or voted ballot.  The voter so notified must be permitted to appear in person at the office of the board to provide the correct information.  In the case of a returned absent voter's ballot, the voter shall have until the tenth day after the election to provide this information to enable his or her ballot to be counted.

### Military ID

The General Assembly has not defined "Military identification." Generally speaking, an acceptable Military ID is an identification card issued by the United States Department of Defense to:

- An active duty member of any branch of the United States Armed Forces (Air Force, Army, Coast Guard, National Guard, Reserves, Joint Services, Marines, or Navy);
- A member of a reserve military unit;
- A retired military personnel;
- A dependent of a military personnel;
- An ROTC student; or
- Some civilian government employees and contractors.

The ID presented must allow the election official to whom it is presented to verify that the person presenting the ID is the person whom they purport to be, and thus, to verify that the

person presenting the ID has the qualifications to vote in the election at which the ID is presented.

Specifically, as of August 2008, all Military IDs should indicate that they are a version of:

- The Common Access Card ("CAC"), including Geneva Convention Identification Cards, Geneva Convention Accompanying Forces Cards, Identification and Privilege Cards, and Identification Cards;
- DD Form 2 (such as DD Form 2A); or
- DD Form 1173.

All CACs look very similar; the slight variations in the form of the ID depend on the ID holder's status in the military and are not at issue for the purpose of voting.

DD Form 2 and DD Form 1173 identification cards are very different in appearance from the CACs, and there are several versions of each card that may look very different from one another. **Examples of the various forms of CACs, DD Form 2s, and DD Form 1173s are included in Addendum No. 2 to this directive.**

### Additional Points of Clarification Regarding Military IDs

- It does not matter what color a military ID is.  The color of the Military ID simply indicates the status of the individual with the military (Inactive Reserve, ROTC, Reserve, Retired, Dependent, or Active).
- It also does not matter what branch of the military the voter is affiliated with, although the branch may be indicated on the ID.
- Expiration dates:
  - o If the ID presented by a voter **does** have an expiration date on it (and most military IDs do), the election official reviewing the ID should apply the definition of current contained in this directive, meaning that the ID is valid if the expiration date has not passed as of the date of the election in which the voter seeks to vote when he or she presents his or her ID.
  - o If the expiration date has passed, the ID may not be used.
  - o Military IDs for retired military personnel and reserve members of the military **do not** have an expiration date on them.  Rather, those ID's indicate that they are valid for an indefinite period of time.  For example, some military IDs may say "INDEF" where an expiration date should otherwise appear.  Military ID's of this nature are valid for purposes of voting whenever presented by a voter.

### Utility Bill

A "utility bill" includes, but is not limited to, water, sewer, electric, natural gas, heating oil, cable or satellite television, internet, telephone or digital telephone, and cellular telephone service.  A "bill" is a statement of fees owed for such services.  A bill is sufficient even if it shows a zero (o) balance due.  The utility bill presented for the purposes of identification must show that it was issued to the voter who has presented it.  The utility bill must show the voter's name and current address, which must conform to the voter's name and address in the record of the board of elections, including the poll list or signature poll book and must be a current statement as defined in this directive.  The bill may be an original or a copy of an original.  Computer generated print-outs of electronically transmitted bills are also valid.

### Bank Statement

A "bank statement" includes, but is not limited to, a statement from any financial or brokerage institution that bears the name and current address of the voter presenting it for identification. The name and address of the voter that appears on the bank statement must conform to the voter's name and address in the record of the board of elections, including the poll list or signature poll book and must be a current statement as defined in this directive. The statement may be an original or a copy of an original. Computer generated print-outs of electronically transmitted statements are also valid.

### Paycheck

A "paycheck" includes, but is not limited to, a paycheck, check stub or receipt provided for direct deposit of wages or earnings from any public or private employer and which bears the name and current address of the voter presenting it for identification. The name and address of the voter that appears on the paycheck must conform to the voter's name and address in the record of the board of elections, including the poll list or signature poll book and must be current as defined in this directive. The paycheck may be an original or a copy of an original. Computer generated print-outs of electronically transmitted check stubs or receipts are also valid.

### Government Check

A "government check" includes, but is not limited to, a paycheck, check stub or receipt provided for direct deposit of funds issued by any political subdivision of this state, including the State of Ohio, or any political subdivision of or by another state or by the United States government that bears the name and current address of the voter presenting it for identification. The name and address of the voter that appears on the government check must conform to the voter's name and address in the record of the board of elections, including the poll list or signature poll book and must be current as defined in this directive. The check may be an original or a copy of an original. Computer generated print-outs of electronically transmitted check stubs or receipts are also valid.

### Other Government Document

"Other government document" includes, but is not limited, to a document that is issued by a government office and that bears the name and current address of the voter presenting it for identification. The name and address of the voter that appears on the government document must conform to the voter's name and address in the record of the board of elections, including the poll list or signature poll book and must be current as defined in this directive. "Government office" includes any local (including county, city, township, and village governments), state, or federal (United States) government office, branch, agency, department, division, or other similar component, including a board, commission, public college or university or public community college, whether or not in Ohio. By way of example, this may include, but is not limited to, letters; bills for taxes and other similar obligations; hunting, fishing and marine equipment operator's licenses; license renewal notices and other notices; filing receipts; court papers; grade reports; or transcripts.

Dir 2008-80 Voter Identification Requirements                                                  page 7 of 7

**Please note that R.C. 3505.18(A) does explicitly provide that an elector *cannot* use as proof of identity a notice that a board of elections mailed to that voter under R.C. 3501.19 or 3503.19.**

If you have questions about this directive, please contact your assigned elections counsel at 614-466-2585.

Sincerely,

Jennifer Brunner

**Chapman, Dona**

| | |
|---|---|
| **From:** | cmecfhelpdesk@ohsd.uscourts.gov |
| **Sent:** | Monday, April 19, 2010 1:00 PM |
| **To:** | ecf.notification@ohsd.uscourts.gov |
| **Subject:** | Activity in Case 2:06-cv-00896-ALM-TPK The Northeast Ohio Coalition for the Homeless et al v. Brunner Consent Judgment |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* There is no charge for viewing opinions.**

### U.S. District Court

### Southern District of Ohio

### Notice of Electronic Filing

The following transaction was entered on 4/19/2010 at 1:00 PM EDT and filed on 4/19/2010
**Case Name:**         The Northeast Ohio Coalition for the Homeless et al v. Brunner
**Case Number:**      2:06-cv-00896-ALM-TPK
**Filer:**
**Document Number:** 210

**Docket Text:**
**CONSENT DECREE. Signed by Judge Algenon L. Marbley on 04/19/2010. (Attachments: # (1) Attachment) (cw)**

**2:06-cv-00896-ALM-TPK Notice has been electronically mailed to:**

John Joseph Kulewicz   jjkulewicz@vssp.com

Paul Gerard Hallinan   phallinan@porterwright.com, dchapman@porterwright.com

Donald Joseph McTigue   mctiguelaw@rrohio.com

H. Ritchey Hollenbaugh   hrh@cpmlaw.com, rms@cpmlaw.com

Alphonse Adam Gerhardstein   agerhardstein@GBfirm.com, areino@gbfirm.com, jthompson@gbfirm.com, lsinclair@gbfirm.com, semrick@gbfirm.com

Patrick J Piccininni   pjpiccin@franklincountyohio.gov

Mary Lynne Birck   mbirck@co.clermont.oh.us

Caroline Gentry   cgentry@porterwright.com, dchapman@porterwright.com, eoconnor@porterwright.com

Richard Nicholas Coglianese   richard.coglianese@ohioattorneygeneral.gov

4/19/2010

Aaron D Epstein aepstein@ag.state.oh.us, cathy.kirby@ohioattorneygeneral.gov, kristen.montgomery@ohioattorneygeneral.gov, margie.welsheimer@ohioattorneygeneral.gov

Craig A Calcaterra craig.calcaterra@ohioattorneygeneral.gov

Lindsay M Sestile Lindsay.Sestile@ohioattorneygeneral.gov, lsestile@gmail.com

Damian W Sikora dsikora@ag.state.oh.us, droth@ag.state.oh.us

Pearl Chin pearl.chin@ohioattorneygeneral.gov, cathy.kirby@ohioattorneygeneral.gov, kristen.montgomery@ohioattorneygeneral.gov

Mark Alan McGinnis mamcginnis@rrohio.com, mctiguelaw@rrohio.com

Subodh Chandra (Terminated) Subodh.Chandra@StanfordAlumni.org, william.ditirro@gmail.com

Jennifer Nicole Fuller jfuller@porterwright.com, ccrawford@porterwright.com, eoconnor@porterwright.com

Daniel B Miller dbmiller@porterwright.com

Michael Joseph Schuler michael.schuler@ohioattorneygeneral.gov

**2:06-cv-00896-ALM-TPK Notice has been delivered by other means to:**

Andrew J Gottman
Porter Wright Morris & Arthur LLP
One South Main Street
Suite 1600
Dayton, OH 45402-2028

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1040326259 [Date=4/19/2010] [FileNumber=2675125-0
] [6c407599378a2a8bf8de747008f39575a0450158109efe4daabb7581ac737a5a7b0
1bdba5f3222fc6307814d7ab82b74277edf0e5c49ad2281effec900ef164e]]
**Document description:** Attachment
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1040326259 [Date=4/19/2010] [FileNumber=2675125-1
] [56ff98341bd914f63b481df1816071193e5beb570d13205fb2a5cf1dabd31959ebe
9bc6d81c350c713490ca4f12f0f3da8d4befe1a5b5a9a25fc801e6a6ec7dd]]



**JENNIFER BRUNNER**
**OHIO SECRETARY OF STATE**

180 EAST BROAD STREET, 16TH FLOOR
COLUMBUS, OHIO 43215 USA
TEL: 1-877-767-6446    FAX: 1-614-644-0649
*WWW.SOS.STATE.OH.US*

**DIRECTIVE 2010-74 (Reissue of SOS Directive 2008-101)**

November 1, 2010

To:    ALL COUNTY BOARDS OF ELECTIONS
       MEMBERS, DIRECTORS, AND DEPUTY DIRECTORS

Re:    Guidelines for Determining the Validity of Provisional Ballots

This directive provides guidelines for Ohio's boards of elections in processing and counting provisional ballots. This includes guidelines on determining the validity of provisional ballots under Ohio law and, generally, the timeframes during which boards may process provisional ballots to determine their eligibility for counting. This directive is a reissue of Directive 2008-101 and complements, but does not supersede, Directive 2008-81, Guidelines for Provisional Voting. This directive also incorporates relevant rulings from the Ohio Supreme Court in *State ex rel. Skaggs v. Brunner*, 120 Ohio St.3d 506, 2008-Ohio-6333, and the United States District Court for the Southern District of Ohio in *Northeast Ohio Coalition for the Homeless v. Brunner*, S.D. Ohio No. 2:06-cv-896.

## I. DEFINITIONS

    **A.** For purposes of this directive, "members of the board" means a majority vote of at least a quorum of the members of the board of elections taken at a public meeting,

    **B.** For purposes of this directive, "processing" provisional ballots means:

- handling provisional ballots in provisional ballot envelopes ("envelopes") as they are cast at a board of elections office or other designated site or as they are returned from precincts on election night;
- moving or storing provisional ballots at a board of elections office or other designated site;
- reviewing envelopes and affirmation statements to initially determine the presumptive eligibility of provisional ballots to be counted;
- sorting provisional ballots in their envelopes into categories of eligible, questionable, and ineligible, and if a board so states in its policy and procedures, into subcategories of ineligible;
- making of a recommendation by board of elections staff to the members of the board as to the eligibility and/or ineligibility of provisional ballots cast in the county for the election in question; and
- documenting the numbers of provisional ballots for each category of provisional ballots during the time and upon completion of all provisional ballots being processed.



EXHIBIT

2

C. For purposes of this directive, "counting" provisional ballots means:

- marking the envelope of provisional ballots that the members of the board have determined are not eligible to be counted;
- moving, and storing in their envelopes, provisional ballots that the members of the board have determined are not eligible to be counted;
- opening the envelopes of provisional ballots that the members of the board have determined are eligible to be counted;
- removing provisional ballots that the members of the board have determined are eligible to be counted from their envelopes and separating them from their envelopes so as to sever the voter's identity from the ballot, thereby preserving the secrecy of the ballot;
- preparing provisional ballots to be counted for scanning by automatic tabulating equipment;
- scanning provisional ballots;
- tabulating votes cast by provisional ballots determined by the board to be eligible to be counted; and
- reporting numbers of provisional votes as part of the board's official canvass of the election.

## II.    TIMEFRAME FOR PROCESSING PROVISIONAL BALLOTS

Generally speaking, and except as otherwise provided in R.C. 3501.183(E)(2) and in this directive, boards of elections may begin processing provisional ballots beginning the day after an election. Boards may continue to process provisional ballots during the ten (10) days after an election, and may continue to do so after the tenth day, if necessary, until all provisional ballots have been processed. All provisional ballot processing must be completed by the end of the official canvass, which must be completed not later than the twenty-first day after the election.

## III.    DELEGATION OF PROCESSING TO BOARD STAFF

Ultimately, the four members of boards of elections must determine the validity of all votes cast in an election and must certify the results of all elections. However, nothing in Ohio law requires that the members of the board must personally, physically complete all tasks associated with preparing for that certification. Thus, boards of elections may, under a policy adopted by the board, delegate the processing and some aspects of the counting of provisional ballots, as discussed throughout this directive, to board staff. Such processing must be done in bipartisan teams according to the instructions provided in this directive. To the extent consistent with Ohio law and this directive, boards may establish and follow additional policies and procedures for processing provisional ballots.

If a board delegates the processing of provisional ballots, it must first adopt a policy setting forth procedures for the processing of provisional ballots that includes the definitions listed in Section I, above. Under a board's policy, board staff responsible for processing provisional ballots must make a recommendation to the board as to the eligibility of voted ballots to be counted each provisional ballot cast in the county, either on an individual basis, or as to groups or categories of similarly situated provisional ballots.

## IV.    BOARD DETERMINES VALIDITY OF PROVISIONAL BALLOTS

Ultimately, the members of the board (see Section I.A. above) of each board of elections must determine the eligibility or ineligibility of all provisional ballots cast within the county in accordance with Ohio law and this directive.  Boards may not delegate this task.

Each board of elections must then cause the ballots to be counted by board staff, and must include the tabulation of that count in its official canvass of the election results and, to the extent required, its certification of the election results to the Secretary of State.

## V.    GENERAL REMINDERS ON PROCESSING PROVISIONAL BALLOTS IN ENVELOPES

It is imperative that boards of elections without fail apply R.C. 3505.183(D) which provides that no provisional ballots may be counted in a particular county until the board of elections for that county determines the eligibility of **ALL** provisional ballots cast in that county to be counted, pursuant to R.C. 3505.183 and this directive.  This means that the board staff responsible for processing provisional ballots must completely process all provisional ballots and make a recommendation to the board that permits the board to vote on the eligibility of provisional ballots cast to be counted, before the board or board staff may begin the procedures for counting provisional ballots.

It is also imperative that boards remember that provisional ballots, like all other ballots or other sensitive election materials, must be handled by bipartisan teams and must be stored in a secure location.  The Secretary of State's office has required boards of elections to implement a system of storage using double lock and key – one key held by Democrats and one key held by Republicans – and provisional ballots must be stored in that environment.

It is also imperative that board members and staff remain cognizant at all times of the importance of maintaining the secrecy of the votes cast by a provisional voter, and act accordingly when opening and removing provisional ballots from their envelopes.

## VI.    GROUNDS FOR COUNTING OR INVALIDATING PROVISIONAL BALLOTS

R.C. 3505.183 is the primary statutory lens through which boards of elections must view provisional ballots and affirmations in order to determine the eligibility of those provisional ballots to be counted.  It sets forth the steps through which a board or its staff must go to determine the eligibility of a provisional ballot to be counted.

### A. Step 1 – Additional Information Required from Voter in Some Cases

R.C. 3505.183(E)(2) provides that boards of elections may not examine the provisional ballot affirmation on the provisional ballot envelope when an election official has indicated the provisional voter must provide additional information to the board of elections in order to ensure that the provisional ballot will be counted. For the purposes of applying R.C. 3505.183, "election official" means board staff responsible for processing provisional ballots, and more specifically, a team of two employees or members of the board of elections or combination thereof with each member of the team being a member of the opposite party of the two major political parties. The determination of a presiding judge or poll worker is insufficient for the

purposes of determining whether a provisional voter must provide additional information to the board of elections in order to ensure that the provisional ballot will be counted.  The reviewing of this statement by an election official must be the first step in determining a provisional ballot's eligibility to be counted.   All statements of poll workers of the nature noted below must be verified by an "election official" as defined in this section:

i.    No additional information required

If no such statement by a poll worker appears on the provisional ballot envelope then the board staff responsible for processing provisional ballots may proceed to Step 2.

ii.    Additional information required

If such a statement by a poll worker appears on a provisional ballot envelope then the election official responsible for processing provisional ballots must independently make such a determination and segregate that ballot and store it, still in its envelope, in accordance with this directive until the provisional voter provides the required additional information.

a)   Additional information required during 10 days after election

Pursuant to R.C. 3505.181(B)(8), there are only four categories of provisional voters who are required to provide additional information to the board of elections during the ten days after the day of an election in order for their ballots to be counted:

(1) An individual who has but is unable to provide to precinct election officials a proper form of identification,[1] and who has a Social Security number but is unable to provide the last four digits of that number to precinct election officials;

(2) An individual who is challenged at a polling place under R.C. 3505.20 and is determined to be ineligible to vote or whose eligibility to vote cannot be determined by election officials;

(3) An individual who does not have a proper form of identification, who does not have a Social Security number, and who declines to execute an affirmation (SOS Form 10-T); and

(4) An individual who has a proper form of identification, but declines to provide it to precinct election officials, and who has a Social Security number but declines to provide the last four digits of that number to precinct election officials.

---

[1] For purposes of this Directive, "proper form of identification" refers to the forms of identification required under R.C. 3505.18(A)(1).  See Directive 2008-80 for additional information on proper forms of identification.

b) Contacting voters to provide additional information during ten days

If a board of elections or board staff determine during the 10-day period that a provisional voter falls into one of the four categories listed above, the board must attempt once to contact the voter by telephone, if a telephone number is available, to remind the voter:

(1) that he or she is required to provide additional information to the board by the tenth day after the election for the provisional ballot to count; and
(2) what additional information is required.

If a board of elections does not have a telephone number for a particular voter, it need not conduct an exhaustive search to attempt to locate a telephone number for that voter, but should document any efforts undertaken to contact the voter.

During the first five days after the day of an election a board of elections may provide notice that additional information is required and advise the voter what additional information is required by postcard or letter rather than by telephone.

c) Additional information required at post-election challenge hearing

If a voter's registration is challenged by another Ohio voter prior to the day of the election under R.C. 3503.24 and the board of elections considering the challenge postpones the hearing until after the day of the election, the voter must vote provisionally at that election and must provide additional information to the board at the hearing in order to ensure that his or her provisional ballot will count.

Upon receipt of the required additional information under this step of this directive, the board staff responsible for processing provisional ballots may proceed to Step 2.

iii.   Failure to provide additional required information

A provisional ballot that is cast by any voter who is required to provide additional information to a board of elections cannot be counted unless and until that voter timely provides the required information. If the board of elections determines that the required information has not been provided, the provisional ballot is not permitted to be counted. See Step 5.

**B. Step 2 – Preliminary Analysis on Provisional Ballot Eligibility**

R.C. 3505.183(B)(1) provides that the first step in determining the eligibility of provisional ballots to be counted is to determine the following:

a) Whether the person who cast the provisional ballot is registered *to* vote;

b) Whether the person who cast the provisional ballot is eligible to vote in the particular election in question; and

c) Whether the person who cast the provisional ballot completed the affirmation on the provisional ballot envelope.

i.    Not Registered or Not Eligible

If the person who cast the provisional ballot is either **not registered to vote or is not eligible to vote in the particular election** in question (e.g., if the vote is cast in the wrong precinct[2]), then pursuant to R.C. 3505.183(B)(4)(a)(i) and (ii), **the board may not count that ballot**.

ii.    Registered, Eligible, and Affirmation Completed

If the person **is** properly registered to vote and is eligible to vote in the particular election in question, **and** the person who cast the provisional ballot completed the affirmation statement on the envelope, then the board staff responsible for processing provisional ballots must proceed to examine the affirmation statement executed by the person who cast the provisional ballot. Pursuant to R.C. 3505.183(B)(1)(a), (b), and (c), that affirmation must contain at least the following three items of information:

a) The name and signature of the person who cast the provisional ballot;[3]

b) A statement that the person who cast the provisional ballot is a registered voter in the jurisdiction in which he or she cast the provisional ballot; and

c) A statement that the person who cast the provisional ballot is eligible to vote in the particular election in which he or she cast the provisional ballot.[4]

iii.    Registered, Eligible, but No Provisional Ballot Affirmation

If the person **is** properly registered to vote and is eligible to vote in the particular election in question, **but** he or she **did not** complete the affirmation statement on the envelope, the board staff responsible for processing provisional ballots must proceed to determine whether the voter, or an election official at the direction of the voter, recorded the voter's name in the affirmation and noted that the voter declined to

---

[2] However, pursuant to a federal court order in *Northeast Ohio Coalition for the Homeless v. Brunner*, S.D. Ohio No. 2:06-cv-896, a board of elections may not reject a provisional ballot cast by a voter who uses only the last four digits of his or her Social Security number as identification when the ballot is cast in the wrong precinct but at the correct multi-precinct polling location for reasons attributable to poll worker error. See Section VII, below.

[3] In *State ex rel. Skaggs v. Brunner*, 120 Ohio St.3d 506, 2008-Ohio-6333, the Ohio Supreme Court held that the affirmation statement must be completed with both the voter's name and signature *or*, if the voter declined to execute the affirmation, the voter's name must be recorded in the affirmation (either by the voter or the poll worker) along with a notation that the voter declined to execute the affirmation in order for a provisional ballot to be eligible to be counted.

[4] Please note that the required statements that the person is a registered voter in the jurisdiction and is eligible to vote in the particular election at issue are pre-printed on the provisional ballot envelope (SOS Form 12-B). The person makes these statements by a completed affirmation.

complete the affirmation. If the voter's name is not so recorded or there is no notation that the voter declined to complete the affirmation, the ballot is not permitted to be counted. See Step 5.

### C.  Step 3 – Additional Analysis on Provisional Ballot Eligibility

i.   In addition to the information required in Step 1, above, and pursuant to R.C. 3505.183(B)(2), in determining the eligibility of any provisional ballot to be counted, the board staff responsible for processing provisional ballots must also examine any information provided by the person who cast the provisional ballot:

a)  that appears in the affirmation on the provisional ballot envelope;
b)  that was made to an election official at the time he or she cast the provisional ballot pursuant to R.C. 3505.182; or
c)  that was made to the board of elections during the ten days after the day of the election.

ii.   Additional information often provided by provisional voters includes, but is not limited to, current and former addresses and date of birth. While this information, if provided, must be considered by boards of elections in determining the eligibility of provisional ballots for counting, nothing in Ohio law requires provisional voters to provide this information. Thus, the absence of such information on a provisional ballot affirmation is not sufficient, on its own, to disqualify a provisional ballot.

iii.   In determining the eligibility of a provisional ballot cast by a voter who uses only the last four digits of his or her Social Security number as identification, the board staff must attempt to determine whether a potentially disqualifying flaw in the ballot is attributable to poll worker error. An otherwise qualifying provisional ballot may not be rejected for reasons that are attributable to poll worker error.[5] Please see Section VII, below, for more information.

### D.  Step 4 – Recommendation to Board on Provisional Ballot Eligibility

During this step, board staff responsible for processing provisional ballots must use the information discussed above, among other things, to determine their recommendations on the eligibility of particular provisional ballots to be counted.

i.   Ballots Eligible to be Counted

Where **ALL** of the following apply, board staff responsible for processing provisional ballots must recommend to the board that a provisional ballot shall count, and a board of elections shall count the provisional ballot:

---

[5] Pursuant to *State ex rel. Skaggs v. Brunner*, 120 Ohio St.3d 506, 2008-Ohio-6333, the failure or refusal of a voter to complete the affirmation of registration and eligibility, in and of itself, cannot be considered poll worker error absent additional evidence that the voter failed to complete the affirmation due to poll worker error.

a) The individual named on the affirmation is properly registered to vote;

b) The individual named on the affirmation is eligible to cast a ballot in the precinct and for the election in which the individual cast the provisional ballot;

c) The individual provided all of the first three items listed below, or in the absence of the first three items, the fourth or the fifth item below:

> (1) His or her name and signature as the person who cast the provisional ballot;
> (2) A statement that he or she, as the person who cast the provisional ballot, is a registered voter in the jurisdiction in which he or she cast the provisional ballot; and
> (3) A statement that he or she, as the person who cast the provisional ballot, is eligible to vote in the particular election in which he or she cast the provisional ballot;

> OR

> (4) His or her name recorded in a written affirmation statement entered either by the individual or at the individual's direction recorded by an election official, and a notation from the election official on the verification statement portion of SOS Form 12-B that the individual declined to sign the affirmation statement;

> OR

> (5) A completed affirmation under R.C. 3505.18(A)(4) (SOS Form 10-T).

d) If applicable, the individual has provided additional information as required by law to the board of elections during the ten days after the day of an election; and

e) If applicable, the individual has been afforded a hearing conducted under R.C. 3503.24, which has resulted in the inclusion of the provisional voter's name in the official voter registration list.

ii.    Ballots Not Eligible to be Counted

If **ANY** of the following apply, board staff responsible for processing provisional ballots shall recommend to the board that a provisional ballot **not** be counted, and a board of elections **shall neither open nor count** the provisional ballot:

a) The individual named on the affirmation is not properly registered to vote;

b) The individual named on the affirmation is not eligible to cast a ballot in the precinct or for the election in which the individual cast the provisional ballot;

c) The individual did NOT provide all of the first three items listed below, or in the absence of the first three items, the fourth or the fifth item below:

    (1) His or her name and signature as the person who cast the provisional ballot;
    (2) A statement that he or she, as the person who cast the provisional ballot, is a registered voter in the jurisdiction in which he or she cast the provisional ballot; and
    (3) A statement that he or she, as the person who cast the provisional ballot, is eligible to vote in the particular election in which he or she cast the provisional ballot;

    OR

    (4) His or her name recorded in a written affirmation statement entered either by the individual or at the individual's direction recorded by an election official, and a notation from the election official on the verification statement portion of SOS Form 12-B that the individual declined to sign the affirmation statement;

    OR

    (5) A completed affirmation under R.C. 3505.18(A)(4) (SOS Form 10-T).

d) The individual has already cast a ballot, including an absentee ballot, for the election in which he or she cast the provisional ballot **unless** the board determines that the signature on the outside of the absent voter's identification envelope does not match the signature of the elector on the elector's registration form (in which case the board should investigate the matter of the nonmatching signatures and verify that the signature provided on the provisional ballot affirmation matches the voter's signature in the board's records – see section VIII. of this Directive) *or* the board receives the elector's absent voter's ballot beyond the statutory deadline for the return of such ballots. If either of the latter two scenarios apply without exception, the board shall count the provisional ballot (if it complies with all the requirements in this directive) instead of the absent voter's ballot;

e) If applicable, the individual has not provided additional information as required by law to the board of elections during the ten days after the day of an election; and

f) If applicable, the individual has been afforded a hearing conducted under R.C. 3503.24, which has resulted in the exclusion of the provisional voter's name in the official registration list.

g) The individual failed to provide any of the following:

    (1) a current and valid photo identification issued by the state or federal government;
    (2) a military identification;

(3) an original or a copy of any of the following bearing the voter's name and current address as is required by Directive 2008-80 on the requirements for voter identification:

    (a) utility bill;
    (b) bank statement;
    (c) government check;
    (d) paycheck; or
    (e) other government document[6];

OR

(4) the last four digits of the individual's Social Security number;

OR

(5) an affirmation under R.C. 3501.18(A)(4) (SOS Form 10-T), or one of the two affirmations already discussed in this directive, above.

## E. Step 5 – Disqualification of Provisional Ballots and Retention

If a board of elections finally determines that a provisional ballot cannot be counted for any of the reasons identified in Ohio law or this directive, then the board, pursuant to R.C. 3505.183(C)(1), shall record:

  i. the name of the provisional voter who cast the ballot;
  ii. the identification number of the provisional ballot envelope, if applicable; the names of the election officials who determined the failure of the validity of that ballot;
  iii. the date and time that the determination was made; and
  iv. the reason that the ballot was not counted.

The board shall maintain this record for the duration of the retention period that applies to the provisional ballot itself.

Further, if a board of elections finally determines that a provisional ballot cannot be counted for any of the reasons identified in Ohio law or in this directive, that provisional ballot envelope may not be opened unless subsequently ordered by a court, and the board shall not count the votes contained on such provisional ballot. Rather, pursuant to R.C. 3505.183(C)(2), the board shall store that ballot, unopened, for the duration of the retention period applicable to that type of ballot, and shall then destroy that ballot in its envelope. Storage of such provisional ballots shall be made in accordance with the requirements for storage of provisional ballots, generally, as provided in this directive.

---

[6] Ohio law provides that notices of election mailed by boards of elections pursuant to R.C. 3501.19, and voter registration notices mailed by boards of elections pursuant to R.C. 3503.19 are not valid "other government documents" for voter ID purposes.

## VII.    <u>PROVISIONAL BALLOTS THAT MAY NOT BE REJECTED DUE TO POLL WORKER ERROR</u>

As explained in Directive 2010-73 under the consent decree issued by the federal court in *Northeast Ohio Coalition for the Homeless v. Brunner*, S.D. Ohio No. 2:06-cv-896, ("*NEOCH*") boards of elections **may not** reject a provisional ballot **cast by a voter who uses only the last four digits of his or her Social Security number as identification** for any of the following reasons:

> (1) The voter provided the last four digits of a Social Security number but did not provide a current driver's license, state issued identification, or other document which serves as identification under Ohio law;
> (2) The voter did not provide a date of birth;
> (3) The voter did not provide an address that is tied to a house, apartment, or other dwelling provided that the voter indicated that he or she resides at a non-building location, including but not limited to a street corner, alley, or highway overpass located in the precinct in which the voter seeks to cast a ballot and that the non-building location qualifies as the individual's voting residence under R.C. 3503.02;
> (4) The voter indicated that he or she is homeless;
> (5) The voter cast his or her provisional ballot in the wrong precinct, but in the correct polling place, for reasons attributable to poll worker error;
> (6) The voter did not complete or properly complete and/or sign the provisional ballot application for reasons attributable to poll worker error; or
> (7) The poll worker did not complete or properly complete and/or sign the provisional ballot application witness line and/or the provisional ballot affirmation form, except for reasons permitted by the governing statutes.

As explained in Directive 2010-73, poll worker error **will not be presumed and must be demonstrated through evidence.**

### Examples of Evidence of Poll Worker Error

> **A.** One example of the type of poll worker error contemplated under the *NEOCH* consent decree occurs when a voter fails to sign the provisional ballot affirmation statement portion of SOS Form 12-B, but the poll worker completes and signs the verification statement portion of SOS Form 12-B indicating that the voter **has** completed the affirmation and without indicating that the voter declined to complete the affirmation.  If this occurs, the board of elections should, either in writing, with written response from the poll worker, or at a public meeting of the board, question the poll workers in that precinct to determine whether they followed the board's instructions for completing the verification statement, both as to the specific ballot in question and in general on Election Day.  Where a poll worker's response indicates that he or she did not properly complete the verification statement, that response and the completed poll worker verification statement provide objective evidence that the poll worker did not ensure that the voter had completed the affirmation before the poll worker filled out the verification statement portion of SOS Form 12-B.[7]

---

[7] See *Skaggs*, 120 Ohio St.3d 506, 2008-Ohio-6333, at ¶¶ 51-53, in which the Ohio Supreme Court stated that in the absence of evidence to the contrary, poll workers will be presumed to have properly performed their duties, but that the outcome may be different when evidence is presented that poll workers failed to perform their statutorily-required duties.

**B.** Another example of poll worker error is where the provisional ballot affirmation envelope (SOS Form 12-B) contains notations indicating that a poll worker directed the voter to the wrong precinct at a polling location containing multiple precincts. Because it is a poll worker's duty to ensure that the voter is directed to the correct precinct, these notations provide objective evidence that the poll worker did not properly or to the fullest extent required carry out his or her Election Day duties. Similarly, if a board of elections finds multiple provisional ballots voted in the correct polling location but wrong precinct, it should, either in writing, with written responses from the poll workers, or at a public meeting of the board, question the poll workers in that polling location to determine whether they followed the board's instructions for ensuring that voters were directed to the correct precinct.

**C.** Failure of a poll worker to complete and sign the "Election Official Verification Statement" portion of SOS Form 12-B is clear evidence of poll worker error because election officials are required by R.C. 3505.182 to complete this information.

## VIII.   ADDITIONAL REQUIREMENTS

R.C. 3505.183 does not expressly provide that a board of elections must attempt to match the signature of the person casting a provisional ballot to the signature on file for that voter, presumably because the statutory scheme contemplates at least one circumstance where a provisional voter does not have to provide a signature (i.e., Step 4, Ballots eligible to be counted, Section VI.D.i.(c)(4), above). However, signature matching has long been a hallmark of election security, is explicitly provided for with respect to other types of ballots under Ohio law, and is a basis for election officials to challenge the right of a person to cast a ballot under Ohio law. As such, when a signature is provided by a provisional voter, boards of elections should, in verifying the identity of that provisional voter, attempt to match the signature with the signature on file for the voter in question.

Boards of election should bear in mind when comparing signatures, though, that signatures do tend to change over time, that there are people who do not sign their name identically every time they sign their name, and that, pursuant to R.C. 3501.05(AA), voters have the right to update their signatures with boards of elections using SOS Form 260.

The Supreme Court of Ohio provided, in *State ex rel. Myles v. Brunner*, 120 Ohio St.3d 328, 2008-Ohio-5097, that in the absence of evidence of fraud, unduly technical interpretations that impede the public policy favoring free, competitive elections must be avoided. Thus, boards of elections should apply the holding in the *Myles* case when matching signatures. Boards should ensure that their primary concern is achieving confidence in the identity of the voter casting the provisional ballot rather than ensuring that every loop and line in a signature precisely and exactly matches the signature on file for the voter. Boards would be well-advised to look to the movement of the signature when performing any signature comparisons.[8]

---

[8] "The *principle of identification* is that two or more writings are the product of one writer, IF the similarities, taken in combination, are sufficiently individual and there are no fundamental differences. And a *fundamental difference* is a difference in some natural feature of the writing, indicative of the individual's writing habit that cannot be reasonably explained. A *signature comparison* is the identification of signatures and involves a combination of line quality and letter design. The line quality is the appearance of the written stroke, caused by basic movements and the manner of manipulating the writing instrument. It results from a combination of factors – skill of the writer, writing fluency, fluctuations in pen pressure and smoothness of movement."
http://sites.google.com/site/advancedmagicofforensicscience/lesson-4

Case: 1:10-cv-00820-SJD Doc #: 8-1 Filed: 11/22/10 Page: 35 of 35  PAGEID #: 272

## IX.  OBSERVERS

R.C. 3505.183(D) provides that observers, as appointed pursuant to R.C. 3505.21, may be present at all times that the board is determining the eligibility of provisional ballots to be counted and counting those provisional ballots determined to be eligible.

That statute further provides that no person shall recklessly disclose the count or any portion of the count of provisional ballots in such a manner as to jeopardize the secrecy of any individual ballot.  By its plain language, this prohibition applies both to election officials and observers, as well as others.

If you have any questions about this directive or its implementation please contact the elections attorney in this office assigned to assist your county board of elections.

Sincerely,

Jennifer Brunner