UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **TRACIE HUNTER,** | : | Case No. 1:10-cv-820 |
| Plaintiff, | : | Judge Dlott |
| v. | : | **INTERVENOR-DEFENDANT JOHN WILLIAMS MEMORANDUM IN OPPOSITION TO *URGENT* MOTION TO ENJOIN STATE-COURT PROCEEDINGS** |
| **HAMILTON COUNTY BOARD OF ELECTIONS,** *et al.*, | : | |
| Defendants. | : | |

> "[However, t]he federal courts [should not be] asked to count and validate ballots and enter into the details of the administration of the election."
>
> *Brunner v. League of Women Voters*, 548 F.3d 463, 478 (6th Cir. 2008) as quoted in Ms. Hunter's Sixth Circuit merits brief at 18.

This matter is before the Court upon the "*urgent*" motion filed by Tracie Hunter ("Ms. Hunter") for an order to enjoin proceedings in the Ohio Supreme Court. That state court action was initiated on December 20, 2010 by a voter who is not a party to this action and by Intervenor-Defendant John Williams in the case of *State ex rel. Painter v. Brunner*, Ohio S. Ct. Case No. 2010-2205. Ms. Hunter's motion should be denied because the state-court action is to determine whether Ohio Secretary of State Jennifer Brunner has been acting in accordance with state law in mandating the process and procedures for the investigation this Court directed. It is not an attempt to reopen the issues in the Federal Court order. Because the Ohio Supreme Court is the ultimate arbiter of state law, and because Ms. Hunter has already acknowledged that

a state forum is relevant here, that is the proper forum for overseeing the process for administering this election. Plaintiff's motion should be denied.

## BACKGROUND

This motion addresses the efforts to reach finality in the election for the position of Juvenile Court Judge of Hamilton County. On November 22, this Court issued an order directing the Hamilton County Board of Elections (the "Board") "*to examine* all 849 faulty provisional ballots for poll worker error and, if such error is found, count the ballots as part of the mandatory recount." The Order *did not specify the manner in which the investigation was to be conducted*. This Court also appropriately declined the plaintiff's request to order the state authorities to proceed in any particular manner. Rather, the Order appropriately left the procedure for implementing the investigation to the state authorities charged with that responsibility. Plaintiff is once again inviting this Court to effectively dictate the state procedures to be followed, an invitation which should be declined.

Since this Court's Order, Secretary of State Jennifer L. Brunner has issued three Directives and one Advisory Opinion on how the Board should conduct that investigation. Those Directives are internally inconsistent in the instructions that they provide to the Board; they contradict provisions of settled Ohio law; and they ultimately required the Board to contact and question over 2200 poll workers to determine if any of the provisional ballots had been cast in the wrong precinct as the result of poll worker error. The last of those Directives came out on the late afternoon of Friday, December 17 and specifically sought to change various procedures set out in Ohio law. The following Monday morning, Intervenor-Defendant John Williams joined a Hamilton County voter in seeking Supreme Court review of those Directives (the "State Court Action") – the proper way in Ohio of challenging the propriety of the Secretary's actions.

12041762.1

2

*State ex rel. Colvin v. Brunner*, 117 Ohio St.3d 108, 2008-Ohio-504 ("if the secretary of state 'has, under the law, misdirected the members of the boards of elections as to their duties, the matter may be corrected through the remedy of mandamus'").

As Ms. Hunter has argued to the Sixth Circuit, the details of the administration of this election are for the state, not the federal court, to determine. This Court's Order specifically refrained from directing the Board as to how to proceed with its investigation. That is, after all, a matter of Ohio law. *Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565 (6th Cir. 2006). The State Court action does not challenge the investigation. It seeks to make sure that the Secretary of State follows Ohio law and that the investigation is carried out consistent with Ohio law. There is thus no impact upon this Court's prior order.

## LAW AND ARGUMENT

**Plaintiffs cannot demonstrate the "critical and exigent circumstances" required to justify this Court's enjoining an Ohio Supreme Court proceeding.**

Plaintiffs ask this Court to enjoin a pending proceeding before the Ohio Supreme Court. Their basis is the All-Writs Act: "all courts established by Act of Congress *may* issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (emphasis added). Plaintiffs simply cannot demonstrate the circumstances that would justify exercise of that power.

The law is clear that "the Act may be invoked '*sparingly and only in the most critical and exigent circumstances.*'" *In re Life Invs. Ins. Co. of Am.*, 589 F.3d 319, 330 (6th Cir. 2009) (emphasis added) (quoting *Wisc. Right to Life, Inc. v. Fed. Election Comm'n*, 542 U.S. 1305, 1306, 125 S.Ct. 2, 159 L.Ed.2d 805 (2004)).

1. **Under controlling Sixth Circuit authority – relied upon by Plaintiff Hunter in her briefing in the Sixth Circuit – responsibility for administering elections is for state officials to determine pursuant to state law.**

Plaintiffs say an injunction is necessary under the All Writs Act because the Supreme Court Action seeks to frustrate this Court's order that the Board investigate whether the 849 ballots were cast in wrong precinct due to poll worker error. That is not true. This Court did not specify how the investigation it ordered was to be conducted. That is a point made loud and clear by Plaintiff Hunter in the brief she filed with the Sixth Circuit:

> [T]here was no order by the district court regarding the level of investigation required. The Board has not sought any guidance from the district court on how to implement the order, nor need it....
>
> Brief of Plaintiff-Appellee at 19 ((Doc. No. 006110823039) (Dec. 21, 2010).

As Plaintiff Hunter says, there was no need for this Court to have set out guidance on how to investigate under the Order. This Court's November 22 Order required that the Board undertake an investigation into poll worker error. The order does not set forth a specific procedure that the Board must follow to investigate for poll worker error. And for good reason, "[t]he Constitution ... leaves the conduct of state elections to the states." *Warf v. Board of Elections of Green County, Kentucky*, 619 F.3d 553, 559 (6th Cir. 2010) (citations and internal quotations omitted); *see also Warf*, 619 F.3d at 559 ("The principles of federalism, therefore, limit the power of federal courts to intervene in state elections" (citations and internal quotations omitted)).

Plaintiffs ask that this Court ignore the Constitution and binding Sixth Circuit precedent and enjoin the Ohio Supreme Court from determining what investigative procedure is proper under Ohio law. Plaintiffs' argument ignores the fact that the Ohio Supreme Court is the

ultimate arbiter of state law, so it is appropriate for it, and not this Court, to oversee the investigative procedure that has been put in place by Secretary Brunner and implemented by the Board.

The Sixth Circuit addressed this very type of issue in *League of Women Voters v. Brunner*, 548 F.3d 463, 478 (6th Cir. 2008) (cited and relied upon by Plaintiff Hunter on this point in her Sixth Circuit merits brief at 18) stating "the federal courts should not be asked to count and validate ballots and enter into the details of the administration of the election." *Id.* (citation and internal quotation marks omitted)). This sentiment is echoed in the decision of *Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 477 (6th Cir. 2008), where the Sixth Circuit again stated "the Help America Vote Act of 2002 ... leaves no doubt which lawmaking body – the federal or state governments – has plenary authority over the counting of provisional ballots. It 'conspicuously leaves . . . to the States' the determination of 'whether a provisional ballot will be counted as a valid ballot.'" *Id.* (quoting *Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565, 577 (6th Cir. 2004)).

Plaintiffs' are requesting that this Court do what the Sixth Circuit has already stated it is not able to do – direct a state on how to count ballots. This Court should deny this request as it is impermissible under *Warf*, *Skaggs*, and *Sandusky*

2. **The action pending in the Ohio Supreme Court addresses issues of state election law and the propriety of the Secretary of State's directives under Ohio law.**

Nor is Relators' Complaint in the Supreme Court Action at odds with this Court's order. Indeed, it states that it "does not in any way challenge the District Court's conclusion. Rather, it addresses exclusively the way in which the investigation should proceed under state election law – since the process and procedure for conducting the examination of provisional ballots is a matter of Ohio election law." *State ex rel. Painter v. Brunner,* Ohio S. Ct. Case No. 2010-2205,

Complaint ¶4.. The prayer for relief confirms that statement. Thus, for example, the Secretary of State has directed that the Board contact and question over 2000 poll workers to determine whether they did their job correctly. Nothing in this Court's order required such contact and questioning.[1] Relators in the Supreme Court Action challenge the Secretary's directives because they require that contact and questioning nowhere contemplated in Ohio law. That is a matter of state law that does not impact this court's prior order.

Moreover, Ohio's county boards of elections have a carefully balanced membership – two members from each party. In the case of a tie vote at the board, the members have 14 days under the statute to submit the tie vote to the Secretary of State who can then break the tie. Ohio Rev. Code §3501.11(X). In the most recent directive addressed to Hamilton County, the Secretary has demanded that tie votes be submitted not within the 14 days set by the Ohio legislature but within 48 hours. The Secretary's power to make that change is solely a question of Ohio law and has no impact on the investigation this Court has ordered.

### 3. Plaintiffs' effort to enjoin the Ohio Supreme Court Action does not come within any of the exceptions to the Anti-Injunction Act.

The Anti-Injunction Act prohibits federal courts from enjoining state proceedings – either directly, by enjoining a state court, or indirectly, by enjoining the parties from proceeding with litigation in the state courts. *See Atlantic Coast Line R.R. v. Bd. of Locomotive Engineers,* 398 U.S. 281, 286 (1970). Unless one of three specifically defined exceptions exists, "the Act is an absolute prohibition of any injunction of any state-court proceedings ...." *Vendo Co. v. Lektro Vend Corp.*, 433 U.S. 623, 630 (1977). "*Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting state courts

---

[1] No poll worker was contacted or questioned about any of the provisional ballots that were accepted or rejected at the time of the Board's November 16, 2010 meeting. So there would have been no reason for the Federal Court to have required that poll workers be contacted or questioned in connection with a determination on equal protection.

*to proceed in an orderly fashion to finally determine the controversy.*" *Atlantic Coast Line R.R.*, 398 U.S. at 297 (emphasis added).

The Anti-Injunction Act provides:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

22 U.S.C. § 2283.

The first exception applies when the injunction is "expressly authorized by Act of Congress." 28 U.S.C. § 2283. In applying this exception, the Court must determine "whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of a state court proceeding." *Mitchum v. Foster*, 407 U.S. 225, 237 (1972). While Section 1983, the basis for Plaintiffs' underlying action in this court, "expressly authorizes" federal courts to enjoin state-court proceedings, it is clear that Plaintiffs are not seeking to enjoin the Ohio Supreme Court based upon section 1983. Thus there are no allegations that the Ohio Supreme Court is about to deprive the Plaintiffs' of their civil rights contrary to section 1983. Nor do Plaintiffs make any effort to satisfy the four-part injunction test that would be required for an injunction to issue under section 1983. *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1098-1100 (11th Cir. 2004) (Pltfs' Motion at 5) (while four injunction factors not necessary under the All-Writs Act, they must be met for any "statutory injunction" in addition to any elements required by the statute) (citing *Hecht Co. v. Bowles*, 321 U.S. 321, 330 (1944)).

Instead, Plaintiffs invoke the All-Writs Act, not section 1983. Therefore, the "expressly authorized" exception is not applicable.

The second exception, injunction "necessary in aid of [a court's] jurisdiction," likewise

has no application here. According to the Sixth Circuit: "We have previously observed that the 'in aid of jurisdiction' exception applies only in 'two scenarios: where the case is removed from the state court, and where the federal court acquires in rem or quasi in rem jurisdiction over a case involving real property before the state court does.'" *In re Life Investors Ins. Co. of America*, 589 F.3d at 330 (quoting <u>Martingale LLC v. City of Louisville, 361 F.3d 297, 302 (6th Cir.2004)</u>). Thus, a court may issue an injunction in aid of its jurisdiction where the federal court first acquires jurisdiction over a case *involving the disposition of real property. See, e.g., Piper v. Portnoff Law Associates,* 262 F. Supp. 2d 520 (E.D. Pa. 2003) (enjoining sheriff's sale of real property homeowner's claim under Fair Debt Collection Practices Act, holding that sale presented a sufficient threat to the federal action because the plaintiff may lose her home in the state proceeding, even though the federal court may conclude that the fees and costs assessed against her property were unlawful).

Importantly, the United States Supreme Court has refused to expand the "in aid of jurisdiction" exception to *in personam* actions. *Atlantic Coast Line R.R. v. Bhd. of Locomotive Engineers,* 398 U.S. 281 (1970). *See also Klay v. United Healthgroup, Inc.,*376 F.3d 1092, 1103 (11th Cir. 2004) (Pltfs' motion at 8) ("In *in personam* actions, federal courts may not enjoin pending state proceedings over the same subject matter."); <u>Roth v. Bank of the Commonwealth, 583 F.2d 527, 535 (6th Cir.1978)</u> ("a simultaneous *in personam* state action does not interfere with the jurisdiction of a federal court in a suit involving the same subject matter"). "In fact, even if there is a danger that the state court might decide first and thereby deprive the federal judiciary from resolving the matter because of res judicata, injunctions of state court actions still are not allowed." *Klay,* 376 F.3d at 1103. *See also* Erwin Chemerinsky, *Federal Jurisdiction* § 14.2, at 842-43 (4th ed. 2003); *Atlantic Coast Line R.R. v. Bhd. of Locomotive Engineers,* 398 U.S. 281 (1970) (where "state and federal courts ha[ve] concurrent jurisdiction ... neither [i]s free to prevent either party from simultaneously pursuing claims in both courts").

Even if this Court were to apply this exception to *in personam* actions, federal jurisdiction is still lacking because the State Court Action no way interferes with the Federal Court's order. *Atlantic Coast Line R.R.*, 398 U.S. at 295 ("it is not enough that the requested injunction [be] related to [the Federal Court's] jurisdiction, but it must be 'necessary in aid of' that jurisdiction …. [the exception implies] that some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case"). Here, as set out above, there is no interference with the Federal Court order. The order requires the Board to further *investigate* 849 ballots to determine "whether provisional ballots cast in the correct polling location but wrong precinct were improperly cast because of poll worker error." It did not specify the manner in which the investigation was to be conducted. The State Court Action is not an attempt to reopen the issues in the Federal Court order; but rather a challenge to the process and procedures mandated by Secretary Brunner.[2]

Nor is there any effort Plaintiffs make to call upon the third exception of the Anti-Injunction Act.[3]

---

[2] Plaintiff's reliance on *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 589 F.3d 835 (6th Cir. 2009) is misplaced. That statutory interpleader action involved the enforcement of a settlement agreement in a final court judgment. In discussing the "in aid of jurisdiction" exception, the court expressly limited its application to the factual situation in that case: "This exception is applicable to a district court's continuing authority to enforce a settlement agreement where the agreement is either incorporated into the court's final judgment or the court expressly retains jurisdiction over the agreement in such judgment." 589 F.3d at 844.

[3] Plaintiffs do not argue that this Court should enjoin the state-court proceeding to effectuate its judgment. This is clear because there has not been a judgment on the merits. The third exception, the so-called "relitigation exception," provides that an injunction may issue "to protect or effectuate [the court's] judgments." 22 U.S.C. § 2283 (2010). This exception provides that when a federal court decides an issue – by entering a final order – it can prevent that same issue from being relitigated in state court where principles of preclusion should bind the state court. *See Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147 (1988) ("[the relitigation exception] is founded in the well-recognized concepts of res judicata and collateral estoppel"). Indeed, the essential prerequisite for applying this exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings "relate to final judgments." *Commerce Oil Refining, Corp. v. Miner*, 303 F.2d 125 (1st Cir. 1962).

Here, this Court granted a Preliminary Injunction. It is well settled that the grant or denial of preliminary relief is not a final judgment. *University of Texas v. Camienisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held

### 4. Plaintiffs have no basis for enjoining Mr. Painter, a non-party to this proceeding.

Plaintiffs assert that this court can proceed to hear and decide this injunction even though one of the parties they seek to enjoin, Mr. Painter, was not a party to this court's prior order and is not a party to this case. Pltfs' motion at 8 ("Notably, the All Writs Act allows this Court to issue orders to non-parties who 'are in a position to frustrate the implementation of a court order.' *United States v. City of Detroit*, 329 F.3d 515, 523 (6th Cir. 2003) (quoting *United States v. New York Tel. Co.*, 434 U.S. 159, 174, 98 S. Ct. 364, 373 (1977))"). But Plaintiffs make no attempt to satisfy the requirements on the Sixth Circuit's decision in *City of Detroit*.

In that case, the court made clear that a nonparty could not be subject to an All Writs Act injunction unless the "consent judgment" on which the All Writs Act was based imposed a "legal obligation" on that nonparty. 329 F.3d at 523 ("only consent judgments that impose obligations pursuant to law can serve as the basis for an injunctive order to a nonparty under the All Writs Act"). Plaintiffs make no suggestion that this requirement has been met here.

Moreover, in *City of Detroit*, the Sixth Circuit went on the examine "four major factors for determining whether a writ issued to a nonparty under the All Writs Act was within the district court's discretion." 329 F.3d at 524. Those factors includeed the nonparty's relationship to the controversy, the burden on the nonparty, the nonparty's interest in not "providing assistance both from an ideological and financial perspective," and the "importance of the nonparty's assistance to fulfilling the goals of the order." *Id.* at 524-26. Here, Plaintiffs simply ignore these factors. This Court can deny Plaintiffs' requested injunction for this reason alone.

---

… the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at a trial on the merits"); *Ross-Whitney Corp v. Smith Kline & French Labs.*, 207 F.2d 190 (9th Cir. 1953); *Doeskin Prods., Inc. v. United Paper Co.*, 195 F.2d 356 (7th Cir. 1952); *Chicago Great W. Ry. Co. v. Chicago Burlington R. Co.*, 193 F.2d 975 (8th Cir. 1952); *Berrigan v. Sigler*, 499 F.2d 514, 518 (D.C. Cir. 1974). As Plaintiffs recognize in not addressing the issue, the entering of a preliminary injunction is not a final judgment, and thus this exception does not apply.

## CONCLUSION

Plaintiffs have openly acknowledged that any issues related to a factual determination about whether individual ballots should be counted are to be challenge in state court by way of an election contest. That analysis necessarily includes whether the procedure used by the Board to investigate poll worker error is proper under Ohio law. Intervenor-Defendant John Williams has properly brought the Supreme Court Action to challenge whether the procedure order by Secretary Brunner and implemented by the Board is proper under Ohio law. This Court should not issue an injunction to stop that challenge.

Respectfully submitted,

/s/ R. Joseph Parker
R. Joseph Parker, Trial Attorney (#0018069)
Beth A. Bryan (#0082076)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957
Tel.: 513.381.2838
Fax: 513.381.0205
parker@taftlaw.com
bryan@taftlaw.com

*Attorneys For John Williams*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed on December 26, 2010 using the Court's CM/ECF system, which will transmit notice of the filing to all counsel of record in this case.

/s/ R. Joseph Parker
R. Joseph Parker