IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TRACIE HUNTER, *et al.*,                          :
                                                  :     Case No. 1:10CV820
                        Plaintiffs,               :
                                                  :     Chief Judge Susan J. Dlott
        v.                                        :
                                                  :     ORDER GRANTING IN PART AND
HAMILTON COUNTY BOARD OF                           :     DENYING IN PART PLAINTIFFS'
ELECTIONS, *et al.*,                              :     MOTION TO ENFORCE
                                                  :     PRELIMINARY INJUNCTION
                        Defendants.               :
                                                  :
                                                  :

        This matter comes before the Court on Plaintiffs' Emergency Motion to Enforce This

Court's Preliminary Injunction and Enjoin Defendant Board From Complying With Directive

2011-04 (doc. 38).  For the reasons set forth below, the Court **GRANTS IN PART AND**

**DENIES IN PART** Plaintiffs' motion.  The Board is hereby (1) enjoined from complying with

Secretary of State Directive 2011-04; (2) ordered to count the 149 ballots that were investigated

and found to have been cast in the wrong precinct due to poll worker's error in determining

whether the street address was located inside the precinct; (3) ordered to count the seven ballots

that were investigated, found to have been cast in the wrong precinct due to poll worker error,

and unanimously voted upon at the Board's December 28, 2010 meeting; (4) ordered to count

the nine ballots that were investigated, found to have been cast in the correct precinct but were

rejected due to staff error, and unanimously voted upon at the Board's December 28, 2010

meeting; and (5) ordered to investigate all ballots subject to the NEOCH Consent Decree for poll

worker error and count those ballots as required by that Consent Decree.

Intervenor Defendant John Williams has dragged this election case over rough terrain in the seven weeks since it was filed.  Though battered by the journey, the case arrives back on the steps of this Court strengthened.  Its strength grows from facts now revealed: the fact that staff or poll worker error — not voter error — was the reason numerous provisional ballots were disqualified in the November general election; and the fact that the Hamilton County Board of Elections ("the Board") counted only some of the provisional ballots improperly cast because of poll worker error.  Were the Board to certify the election results as they were on November 16, 2010, which is what the Ohio Secretary of State has directed it to do, the Board would violate the Equal Protection Clause of the United States Constitution.  This Order prevents that result.

## I.       BACKGROUND

On November 22, 2010, following a hearing on Plaintiffs' motion for a preliminary injunction, this Court ordered the Board to "immediately begin an investigation into whether poll worker error contributed to the rejection of the 849 provisional ballots now in issue and include in the recount of the race for Hamilton County Juvenile Court Judge any provisional ballots improperly cast for reasons attributable to poll worker error."  (Doc. 13 at 9.)  The Court issued the Order after discovering that, despite state law prohibiting the counting of provisional ballots cast in the wrong precinct, the Board had counted some provisional ballots cast in the wrong precinct because they found they were improperly cast because of poll worker error.

At the time the Court issued its Order, it understood from evidence adduced at the hearing that the required investigation could be completed within two weeks.  Seven weeks later, the actions the Order required remain incomplete, and the winner of the race for Hamilton

2

County Juvenile Court Judge is undetermined.  The deadline for amending the certified election results based on the mandatory automatic recount looms.

Plaintiff Tracy Hunter filed this lawsuit on November 21, 2010 claiming, among other things, that the Board's failure to count the provisional votes of citizens who voted at the correct polling location but at the wrong precinct violates the Equal Protection and Due Process Clauses of the United States Constitution. Hunter proved to the Court that she was likely to succeed in the merits of her Equal Protection claim, and the Court ordered the Board to investigate instances of poll worker error.  Defendant Williams, putative Hamilton County Juvenile Court Judge Elect, sought to stop the Board from complying with the Court's Order by filing an appeal two days before Thanksgiving.  The Sixth Circuit temporarily stayed this Court's Order pending review by a full panel of the court.  *Hunter v. Hamilton County Bd. of Elec.*, No. 10-4481 (6th Cir. Nov. 24, 2010).  The panel dissolved the stay approximately a week later, noting that the Board's decision to treat ballots cast in early voting at its main office differently from ballots cast in the wrong precinct at regular polling stations on election day constituted disparate treatment.  *Hunter v. Hamilton County Bd. of Elec.*, No. 10-4481 (6th Cir. Dec. 2, 2010.)  The Board then resumed its attempts to comply with this Court's Order.  To assist the Board, then Secretary of State Jennifer Brunner issued Directives 2010-80 and 2010-87, setting forth instructions on how to proceed with the investigation this Court ordered.

The Board began investigating why provisional ballots might have been cast in the correct location but the wrong precinct, interviewing poll workers and re-examining provisional ballot envelopes.  This investigation revealed that poll worker error and staff error resulted in numerous provisional ballots being disqualified.   For example, seven poll workers interviewed

*admitted that they made a mistake in processing the ballot* by misidentifying the voter's correct precinct. (*See* exhibits to doc. 38.) Additionally, the Board discovered through the course of its investigation that nine provisional ballots had been cast *in the right precinct all along* but the Board staff on November 16 had improperly put them in the pile of "wrong precinct" ballots. Finally, the Board determined that fifty-one percent of the provisional ballots cast in the right location but wrong precinct lived on boundary streets between precincts and that poll workers struggled to use street lists correctly, particularly when odd and even street numbers made the difference between precincts.[1]

Undeterred, Williams filed a mandamus action in the Ohio Supreme Court on December 20, 2010, asking that it order Secretary Brunner to rescind those directives. The Ohio Supreme Court granted Williams' motion, compelling the board of elections to rescind its decisions made pursuant to the Secretary's directives and "instead review the 850 provisional ballots that are the subject of Judge Dlott's order and are not subject to the consent decree in [*NEOCH*], with exactly the same procedures and scrutiny applied to any provisional ballots during the board's review of them leading up to its decision on November 16, without assuming that poll-worker error occurred in the absence of specific evidence to the contrary." *State ex rel. Painter, et at. v. Brunner*, No. 10-2205 (Ohio Jan. 7, 2011 at 23). Later that same day, Secretary Brunner issued Directive 2011-03, which ordered the Board to process and count specific categories of "wrong precinct but correct polling place" provisional ballots. *See* doc. 38-9. Generally speaking, these categories involved provisional ballots cast by voters who lived on streets that passed through

---

[1] "[S]treet lists can at times be difficult to read and interpret correctly. For example . . . Madison Road passes through no fewer than 22 different precincts. In some areas, odd street numbers are in one precinct, even in another. In other cases, both sides of the street are in a single precinct." Doc. 38-8, Burke Aff. Ex. 1.

multiple precincts, and the ballot was cast in a precinct that covered the voter's street but not the voter's specific street address.  The following Monday, Jon Husted took office as the new Ohio Secretary of State.  Secretary Husted issued Directive 2011-04 rescinding Secretary Brunner's directive and ordering the Board not to count any of the 850 provisional ballots that are the subject of this Court's preliminary injunction order.  *See* doc. 38-1.

Throughout it all, the mandates of this Court's November 22, 2010 Order remain undone. The scenario that warranted the Order — the Board's counting of some, but not all, provisional ballots cast in the wrong precinct (which is a violation of Ohio statute) — has not been rectified.

## II.    ANALYSIS

> The right to vote is protected in more than the initial allocation of the franchise.  Equal protection applies as well to the manner of its exercise.  **Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another**.  *See, e.g.*, *Harper v. Virginia Bd. of Elections*, 383 U.S. 663, 665, 86 S. Ct. 1079, 16 L.Ed.2d 169 (1966) ("[O]nce the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment").  It must be remembered that "the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise."  *Reynolds v. Sims*, 377 U.S. 533, 555, 84 S. Ct. 1362, 12 L. Ed.2d 506 (1964).

*Bush v. Gore*, 531 U.S. 98, 104-105, 121 S. Ct. 525, 530 (2000) (emphasis added).

The material issue before this Court is not who wins the race for Hamilton County Juvenile Court Judge.  To be sure, there is no way of knowing at this moment whether counting additional provisional ballots will alter that outcome.  What *is* certain is that allowing the Board to ignore evidence of poll worker error and not count provisional ballots that were improperly

cast through no fault of the voter will seriously undermine citizens' confidence in the outcome of this election.

The Board has been put in an untenable position from the outset of this litigation, and the Court recognizes the quandary Board members have faced.  The Court also notes that there is no allegation that any error on the part of poll workers or Board staff was intentional.  To the contrary, the evidence demonstrates that poll workers did not know they had made errors resulting in a ballot being cast in the wrong precinct.  Poll workers attempted to do the right thing, and upon realizing after the fact that their error resulted in a ballot being disqualified, the workers readily agreed that the ballot should be counted.

The steps that led to the current morass began in 2006 when The Northeast Ohio Coalition for the Homeless filed suit against then Ohio Secretary of State Kenneth Blackwell, claiming, among other things, that new voter identification laws placed an unequal and undue burden on indigent and homeless persons' right to vote.  After three and a half years of litigation, the parties entered into, and the Court approved, a Consent Decree designed to ensure that registered and qualified voters who lacked identification were not deprived of their right to vote. *NEOCH v. Brunner*, No. 2:06-cv-896 (S.D. Ohio April 19, 2010).  One specific provision of the Decree was designed to ensure that voters would not be deprived of their fundamental right to vote because of failures by poll workers to follow Ohio law. *Id.*  Following the entry of the Consent Decree in *NEOCH*, Secretary Brunner issued Directives 2010-73, 2010-74, and 2010-79, all of which addressed the Consent Decree and which prohibited boards of elections from rejecting a provisional ballot cast by a voter who uses only the last four digits of his or her Social Security number as identification for seven specific reasons, including, because the "voter cast

his or her provisional ballot in the wrong precinct, but in the correct polling place, *for reasons attributable to poll worker error*."

The Hamilton County Board of Elections, in determining the validity of provisional ballots cast in the November 2010 general election, was well aware of the Secretary's Directives and, therefore, knew that it was required to count the provisional ballot of a voter who used his Social Security number as identification but cast the ballot in the wrong precinct because of poll worker error.  The Board also was well aware of Ohio Revised Code ("O.R.C.") § 3505.181(C), which provides that a provisional ballot cast in the wrong precinct is not to be opened or counted.

The Board recognized the dichotomy between the Ohio Code and the Directive and seemingly understood that it was to consider poll worker error only as to the provisional ballots addressed by the *NEOCH* Consent Decree and resulting Directives.  However, at meetings held on November 16, 2010 and November 19, 2010, the Board found multiple instances of poll worker error in its review of the provisional ballots.  For example, the Board discovered that approximately twenty-seven provisional ballots had been cast in the wrong precinct, even though the ballots had been cast at the Board of Elections downtown.  Because the only explanation for such a result was poll worker error, the Board voted that these twenty-seven ballots be counted.  Neither Ohio statute nor any Directive authorized such a vote.  However, it is not surprising that the notion of fundamental fairness drove the Board to unanimously vote to count those ballots.  The voter had done everything right.  To disqualify the ballot because of poll worker error would have been fundamentally unfair.

It is oft said that the road to hell is paved with good intentions.  No doubt the Board has had time to reconsider its decision to count these twenty-seven provisional ballots, but the matter cannot now be undone.  The Board remade those provisional ballots in the correct precinct and counted them.  And herein lies the crux of the matter: to count some provisional ballots disqualified because of poll worker error and not to count other provisional ballots disqualified because of poll worker error violates the fundamental premise that "equal weight [be] accorded to each vote and . . . equal dignity owed each voter."  *Bush v. Gore*, 531 U.S. at 104.

The state must avoid the arbitrary and disparate treatment of qualified voters.  While Ohio has safeguards in place to ensure uniformity of elections, those safeguards have irretrievably broken down in this case.  On November 16, 2010, the Board determined that provisional ballots cast in the wrong precinct because of "clear poll worker error" should be remade to the proper precinct and counted.  For the purposes of the November 2010 general election conducted in Hamilton County, Ohio, therefore, that standard must be applied uniformly to all Hamilton County voters who cast provisional ballots in the wrong precinct.

Regardless of the impetus of the Board's December inquiry into the existence of poll worker error, that evidence is now in the record.  The evidence shows that seven ballots were cast in the wrong precinct due to poll worker error (*see* doc. 38 at 3); nine ballots were properly cast in the right precinct all along and were not counted due to staff error; (*id*. at 5); and 149 ballots were cast in the right location/wrong precinct due to poll worker error in determining whether the street address was located inside the precinct (*id*. at 6).  There is no prohibited "presumption" of poll worker error in these instances.  Rather, there is either direct or

circumstantial evidence that poll workers erred by not directing the voter to the correct precinct in violation of their statutory duty. O.R.C. § 3505.181(C).

Standing in the face of this evidence, it is just as clear that the above-described provisional ballots were disqualified due to poll worker error as it was that the twenty-seven provisional ballots cast at the Board of Elections building were cast in the wrong precinct due to poll worker error. To treat these groups of provisional ballots differently when they are the same for the purposes of being improperly cast due to poll worker error violates voters' right to equal protection under the law. Because the Board has already counted certain provisional ballots cast in the wrong precinct due to poll worker error, the remaining ballots that fall in the same category must be counted.

The Court disagrees, however, with Plaintiffs' argument that an unknown number of ballots should be counted because there was no evidence of *voter* error, therefore the error must be attributable to the poll worker. The Board did not, on November 16, take the position that lack of evidence of voter error was a basis for counting provisional ballots cast in the wrong precinct. The Court will not extend the rule beyond that already espoused by the Board.

Plaintiffs also ask the Court to appoint a special master to oversee and conduct the investigation pursuant to Fed. R. Civ. P. 53. While noting Plaintiffs' concerns, the Court ultimately finds that it is unnecessary to appoint a special master to supervise implementation of this Order. The Court is confident that the Board can investigate the ballots subject to the *NEOCH* Consent Decree for poll worker error as required by that Consent Decree. Furthermore, it is also unnecessary to enjoin the Board from complying with the statutory deadline to amend

the certification.  The Board must complete the limited investigation this Order requires before that time.

Briefly, the Court notes that *Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565 (6th Cir. 2004) does not, as Defendant has suggested, prohibit this Court from ordering that provisional ballots cast in this election be counted on equal terms.  The *Sandusky* Court held that "ballots cast in a precinct where the voter does not reside and which would be invalid under state law for that reason are not required by [the Help America Vote Act ("HAVA")] to be considered legal votes."  *Id*. at 568.  This Court is not holding that ballots cast in a precinct where the voter does not reside must be considered legal votes.  This Court is holding that, because the Hamilton County Board of Elections decided that it would consider some provisional ballots cast in the precinct where the voter did not reside as legal votes, it must consider all such ballots using the same criteria — in this case, whether the provisional ballot was cast in the wrong precinct because of poll worker error.

III.     **CONCLUSION**

For the foregoing reasons, this Court **GRANTS IN PART** Plaintiffs' Emergency Motion to Enforce This Court's Preliminary Injunction.  (Doc. 38.)  The Board is directed to undertake the actions set forth in the first paragraph of this Order and complete such action before January 22, 2011, the statutory deadline for amending the certification.  Plaintiffs' Emergency Motion for Order to Enjoin State Court Proceedings (Renewed) (doc. 35) is DENIED AS MOOT.

IT IS SO ORDERED.

         s/Susan J. Dlott
         Chief Judge Susan J. Dlott
         United States District Court