IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TRACIE HUNTER, *et al.,*                   :
                                           :   Case No. 1:10CV820
                   Plaintiffs,             :
                                           :   Chief Judge Susan J. Dlott
         v.                                :
                                           :   ORDER DENYING DEFENDANTS'
HAMILTON COUNTY BOARD OF                   :   MOTION TO STAY PENDING
ELECTIONS, *et al.*,                       :   APPEAL
                                           :
                   Defendants.             :
                                           :
                                           :

        This matter is before the Court on Hamilton County Board of Elections' motion to stay

any further proceedings in this action pending an appeal to the Sixth Circuit Court of Appeals of

this Court's judgment and order issued on February 8, 2012 (Doc. 199).  For the following

reasons, the motion is DENIED.

## I.  BACKGROUND

        On February 8, 2012, this Court issued a judgment and order that made the following

conclusions:  (1) the Hamilton County Board of Elections is not immune from suit in this case;

(2) Plaintiffs have standing to challenge the Board's treatment of provisional ballots cast in the

2010 general election and to enforce the *NEOCH* (*Northeast Ohio Coalition for the Homeless*)

Consent Decree; (3) NEOCH and the Ohio Democratic Party's amended complaint is not subject

to dismissal, (4) when counting provisional ballots following the November 2010 general

election, the Board violated provisional voters' constitutionally protected right to have their

votes counted on equal terms; and (5) the Board violated the *NEOCH* Consent Decree.  Based on

1

these conclusions, the Court granted a permanent injunction that enjoined the Board from rejecting the following three categories of provisional ballots: (1) otherwise valid provisional ballots that were cast in the correct location but in the wrong precinct, (2) provisional ballots determined to have been cast in the correct precinct all along, and (3) provisional ballots unanimously determined by the Board to have been cast in the wrong precinct due to poll-worker error.  Additionally, the Court ordered the Board to comply with the *NEOCH* Consent Decree with respect to provisional ballots cast in the Hamilton County 2010 general election.

On February 22, 2012, the Board appealed this judgment and order to the United States Sixth Circuit Court of Appeals.  Shortly thereafter, the Board filed the instant motion to stay.

## II.  DISCUSSION

When considering whether to grant a stay pending appeal, a court is to apply the traditional four-part injunctive relief test, which asks:

> (1) whether the defendant has a strong or substantial likelihood of success on the merits; (2) whether the defendant will suffer irreparable harm if the district court proceedings are not stayed; (3) whether staying the district court proceedings will substantially injure other interested parties; and (4) where the public interest lies.

*Family Trust Found. of Ky., Inc. v. Kentucky Judicial Conduct Comm'n*, 388 F.3d 224, 227 (6th Cir. 2004) (quoting *Baker v. Adams County/Ohio Valley Sch. Bd.*, 310 F.3d 927, 928 (6th Cir. 2002)).  The court balances these factors, requiring the movant to "demonstrate at least serious questions going to the merits and irreparable harm that decidedly outweighs the harm that will be inflicted on others if a stay is granted."  *Id.* (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985)).

### A.  Likelihood of Success on the Merits

2

The Board asserts that there are five aspects of this Court's order that it is likely to convince the appellate court to reverse: the Court's findings of fact and chosen remedy regarding Plaintiffs' equal protection claim, the Court's order requiring the Board to count "illegal" ballots, the Court's finding that the Board is not entitled to Eleventh Amendment immunity, the Court's dicta concerning the constitutionality of Ohio election law, and the Court's finding that the *NEOCH* Consent Decree is valid.

### 1. Equal Protection

The Board argues that this Court's equal protection decision is flawed because it erred both in its factual findings and in its choice of remedy.  "When reviewing the decision of a district court to grant or to deny a request for issuance of a permanent injunction . . . [f]actual findings are reviewed under the clearly erroneous standard, . . . and the scope of injunctive relief is reviewed for an abuse of discretion."  *Worldwide Basketball and Sport Tours, Inc. v. Nat'l Collegiate Athletic Ass'n*, 388 F.3d 955, 958 (6th Cir. 2004) (quoting *Sec'y of Labor, U.S. Dep't of Labor v. 3Re.com, Inc.*, 317 F.3d 534, 537 (6th Cir. 2003)).

The Court made the factual findings that the ballots miscast at the Board office were similar to the ballots miscast at correct polling locations and that the two sets of ballots were treated differently.  The Board questions the validity of the Court's conclusion that the two sets of ballots were similar because the Court also found that the provisional voting process in precincts on Election Day is "chaotic."

The Court's finding that there was a chaotic atmosphere in precincts does not take away from the numerous factual findings lending to the Court's conclusion that the ballots were similar and should have been treated as such.  As the Sixth Circuit stated in its remand of the

3

matter, "[t]he evidence of poll-worker error with respect to those [ballots cast at the right polling location but wrong precinct] . . . is substantially similar to the location evidence considered by the Board with respect to the ballots cast at its office. . . .  To be sure, there may be more explanations for why the voter might have erred at the multiple-precinct polling locations than at the Board office, requiring a greater inference to conclude that the miscast ballot was a result of poll-worker error, but Defendants have not presented any persuasive rationales." *Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 237 (6th Cir. 2011).  On remand, this Court "implement[ed] both the letter and the spirit" of the Sixth Circuit's mandate, "taking into account the appellate court's opinion and the circumstances it embrace[d]." *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006).  At the injunction hearing, the Court offered the Board ample opportunity to present any facts or rationales that would justify a conclusion that the miscast ballots cast at correct multi-precinct polling locations were the result of anything other than poll-worker error, and the Board failed to do so.  On this record, the Court is unconvinced that the Board is likely to succeed in its challenge to the Court's factual findings.

The Board next takes issue with the remedy the Court ordered to rectify the equal protection violation: that the Board count the wrong precinct ballots cast at correct multi-precinct polling locations just as it counted wrong-precinct ballots cast at the Board office.  The Board claims this remedy is inappropriate because federal courts should not involve themselves in determining which ballots should be counted.  The question, really, is this: in the face of a known violation of the right to vote on equal terms, what remedy can suffice?  Fortunately, this case presents a unique and narrow set of facts that make it possible for the Court issue an equitable remedy that will right the wrong that has been committed.

Defendants state that there were two possible avenues by which to correct any constitutional wrong in this case: (1) uncount the already counted provisional ballots cast in the wrong precinct due to poll-worker error, or (2) count the remaining provisional ballots cast in the wrong precinct due to poll-worker error.[1]  It argues that this Court chose the wrong remedy when it ordered the Board to undertake the second of these two options — to count additional ballots. However, the Sixth Circuit considered Defendants' suggestion to "uncount" the wrong-precinct ballots cast at the Board of Elections and rejected it.  *Hunter*, 635 F.3d at 245.  The appellate court found the suggestion to uncount the ballots unsatisfactory because, among other reasons, "it is preferable as an equitable matter to enable the exercise of the right to vote than it is to ignore the results of the investigation already undertaken."  *Id.*

Given the Sixth Circuit's articulated disfavor for uncounting ballots, this Court was left to construct a remedy that preserved the franchise yet was narrow in scope.  As the Supreme Court noted, "in constitutional adjudication as elsewhere, equitable remedies are a special blend of what is necessary, what is fair, and what is workable.  'Traditionally, equity has been characterized by a practical flexibility in shaping its remedies and by a facility for adjusting and reconciling public and private needs.'"  *Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973) (quoting *Brown v. Bd. of Educ.*, 349 U.S. 294, 300 (1955)).   Thus, "[i]n shaping equity decrees, the trial court is vested with broad discretionary power; appellate review is correspondingly narrow."  *Id.* (citing *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1 (1971)).

---

[1]  The Court could have, in the exercise of its broad discretion to fashion an equitable remedy, ordered a new election.  *See*, *e.g.*, *Griffin v. Burns*, 570 F.2d 1065 (1st Cir. 1978) (affirming trial court's judgment ordering a new primary for a vacant city council seat). However, Plaintiffs did not request this remedy, and ordering the Board to open and count approximately 300 provisional ballots is a less disruptive, more efficient means of rectifying the constitutional violation that occurred in this case.

The Court, having weighed the importance of the preservation of the rights of the public and the practical considerations faced by the parties, ordered the Board to count only those provisional ballots cast in the correct location but in the wrong precinct due to poll-worker error — provisional ballots that should have been afforded treatment equal to that given to wrong-precinct ballots cast at the Board office. This remedy serves to protect the right of qualified voters to have their votes counted on equal terms with others, and nothing more.

Defendants' argument, that federal courts should not get involved in local elections, oversimplifies the law. The Sixth Circuit has noted that federal courts generally should not be asked to enter the details of the administration of an election. *See League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 478 (6th Cir. 2008). However, it also has recognized that there are exceptions to this general rule — namely, when there is an appropriate challenge to "the fairness of the official terms and procedures under which the election was conducted." *Id.* (quoting *Griffin v. Burns*, 570 F.2d 1065, 1078 (1st Cir. 1978)).

*Griffin*, cited favorably by the Sixth Circuit, involved an election dispute in which the state invalidated certain ballots after the election.[2] The First Circuit Court of Appeals acknowledged that "[c]ircuit courts have uniformly declined to endorse action under § 1983 with respect to garden variety election irregularities." *Id.* at 1076. However, in affirming the district

---

[2] In *Griffin*, 570 F.2d 1065 (1st Cir. 1978), voters challenged the state's post-election invalidation of absentee and shut-in ballots when the state had offered these ballots to voters prior to the election. The voters had no reason to think that their shut-in or absentee ballot would be invalidated, and "in utilizing such ballots voters were doing no more than following the instructions of the officials charged with running the election." *Id.* at 1075. The court found "no merit" in the argument that "claimed election irregularities of this sort are beyond the ken of a federal court." *Id.* The court concluded that "[w]hen a group of voters are handed ballots by election officials that, unsuspected by all, are invalid, state law may forbid counting the ballots, but the election itself becomes a flawed process." *Id.* at 1076.

6

court's decision to invalidate the election and order a new primary, the *Griffin* court concluded that "there remain some cases where a federal role is appropriate." *Id.* at 1077. "The right to vote remains, at bottom, a federally protected right. . . . [and] there is precedent for federal relief where broad-gauged unfairness permeates an election, even if derived from apparently neutral action." *Id.* at 1077 (discussing *Ury v. Santee*, 303 F. Supp. 119 (N.D. Ill. 1969) (federal court invalidating an election on due process and equal protection grounds) and *Briscoe v. Kusper*, 435 F.2d 1046 (7th Cir. 1970) (affirming court's finding that the election board's refusal to accept nominating petitions was constitutionally unacceptable when Board changed rules but did not announce new requirements)).

The *Griffin* court observed that there is not a "litmus test for the determination of federal jurisdiction in every voting case," but that in cases where the state's administrative and judicial corrective process fails to afford fundamental fairness, "a federal judge need not be timid, but may and shall do what common sense and justice require." *Id.* at 1078. This Court applied these principles when crafting the remedy it ordered in this case. The Court did *not* parse through individual ballot envelopes or otherwise "enter into the details of the administration of the election." *League of Women Voters*, 548 F.3d at 478. To the contrary, the Court examined the factual predicates and reasoning behind the Board's decision to accept the wrong-precinct ballots cast at the Board office, and ordered the Board to apply that reasoning to a limited batch of other wrong-precinct ballots. This remedy appropriately targets "the unfairness that infected the results of a local election" and does not require the court to examine the validity of individual ballots. *See Griffin*, 570 F.2d at 1078. Accordingly, the Court is not convinced that the Board is likely to succeed in its challenge to the scope of the injunctive relief.

In its reply memorandum in support of its motion for stay, the Board raises novel arguments that it states will be presented to the Sixth Circuit and which have not been previously decided. For example, the Board now contends that this Court's equal protection analysis relies on an erroneous premise: that Ohio law requires a person to vote the ballot associated with the precinct of their residence. The Board states that there is no such Ohio statute and that, instead, the statute requires a person "to vote *in the precinct* in which they reside." This is a curious interpretation of the law and one that the secretary of state surely has not considered. If correct, it would mean that the very existence of multi-precinct voting locations violates Ohio law because there is no way a person can "vote *in the precinct* in which he resides" when there is not a voting location in that voter's precinct. In short, the Board has failed to present a serious question going to the merits of this Court's judgment and order regarding Plaintiffs' equal protection claim.

### 2. Counting Illegal Ballots

The Board next states that the Court's order to count all correct-location, wrong-precinct ballots must be reversed because the order requires the Board to count at least some ballots that are illegal for other reasons. The Board points to one ballot in particular regarding which a poll worker testified that the voter claimed her current address was where the poll worker herself lived, and the poll worker testified that the voter did not live with her. The Board asserts that this evidence establishes that that particular ballot was fraudulent. Because this ballot was cast in the correct location but the wrong precinct, the Board is concerned that the Court's order requires that ballot to be counted.

8

The Court's order to count correct-location, wrong-precinct ballots only pertains to those provisional ballots that were in all other respects valid.  Specifically, the order states that the Board is "enjoined from rejecting *otherwise valid* provisional ballots that were cast in the correct location but the wrong precinct."  (Doc. 199 at 92 (emphasis added).)  Thus, the Board's concern that the that the order requires it to count otherwise illegal ballots is unfounded.

### 3.  Eleventh Amendment Immunity

The Board challenges the Court's judgment that the Board waived its immunity from suit under the Eleventh Amendment.  The Board does not assert that the Court relied on any erroneous fact findings in reaching its conclusion, nor does it offer a legal basis for disputing the Court's conclusion that the Board waived its immunity defense.  In the absence of any law or argument contrary to the Court's finding, the Court cannot conclude that the Board has demonstrated a serious question regarding the Court's judgment on this issue.

### 4.  Constitutionality of Ohio Election Law

The Board next asserts that this Court should grant its motion to stay pending an appeal because the issue of whether Ohio's provisional voting laws are unconstitutional must be resolved.  The Court did not issue a judgment as to whether Ohio's provisional voting laws are constitutional because that question was not properly before the Court.  The Board does not articulate why it believes the Sixth Circuit would make a ruling on an issue not decided by this Court or, if the Sixth Circuit did rule on that issue, why it would rule in the Board's favor.  Accordingly, the Board has not raised a serious question going to this Court's decision (or lack thereof) on the constitutionality of Ohio election law.

### 5.  Validity of the *NEOCH* Consent Decree

9

The Board disagrees with this Court's conclusion that the *NEOCH* Consent Decree does not suspend the operation of Ohio election law and is valid. The Board asserts that *State ex rel. Painter v. Brunner*, 128 Ohio St. 3d 17 (2011), in which the Ohio Supreme Court held that there is no exception to the statutory requirement that provisional ballots be cast in the voter's correct precinct, "conclusively set forth the meaning and operation of this portion of Ohio election law."

*Painter* found that the secretary of state erred in ordering the Board to investigate instances of poll-worker error with respect to the 850 wrong-precinct ballots cast in this case because there is no statutory exception to the requirement that provisional ballots be cast in the voter's correct precinct. *Id*. at 28. However, the court in *Painter* also acknowledged that "the secretary of state also has a duty to instruct election officials on the applicable requirements of federal election law as well as federal court orders that are applicable to them." *Id*. The *Painter* court went on to discuss the *NEOCH* Consent Decree, noting that it "specifies only that boards of elections may not reject a provisional ballot 'cast by a voter, *who uses only the last four digits of his or her social security number as identification*' for any of several reasons, including that the 'voter cast his or her provisional ballot in the wrong precinct, but in the correct polling place, for reasons attributable to poll worker error.'" *Id*. at 29 (quoting *NEOCH* Consent Decree). The secretary of state's error, according to the Ohio court, was that her postelection directives and advisory applied more expansively to the 850 provisional ballots cast in the wrong precinct. *Id*. Because the Board relies only on the *Painter* decision to support its argument that it will succeed on the merits of its appeal of this Court's judgment affirming the validity of the *NEOCH* Consent Decree, and because *Painter* does not call the validity of the Consent Decree into question, the Board has not seriously called into question the Court's holding on this issue.

While "a movant need not always establish a high probability of success on the merits" to justify a stay, "the movant is always required to demonstrate more than the mere 'possibility' of success on the merits." *Michigan Coalition of Radioactive Materials Users, Inc. v. Griepentrog*, 945 F.2d 150, 153-54 (6th Cir. 1991) (quoting *Mason Cnty. Medical Ass'n v. Knebel*, 563 F.2d 256, 261 n.4 (6th Cir. 1977)). The Board has not done so here. Nonetheless, the Court will consider the remaining factors relevant to a consideration of the Board's motion to stay pending the appeal.

### B. Irreparable Harm to Defendants

The Board claims that if it is forced to comply with the Court's order to open and count otherwise valid right-location, wrong-precinct ballots, two types of irreparable harm will occur: (1) whichever judge is found to be the winner of the Juvenile Court Judge seat might have to be unseated if the Sixth Circuit or Supreme Court reverses or modifies this Court's judgment, and (2) the Board might be sanctioned by the Ohio Supreme Court if it complies with this Court's ruling, which the Board believes is in conflict with *Painter*.

In evaluating the harm that will occur depending upon whether or not a requested stay is granted, a court generally looks to three factors: "(1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided." *Griepentrog*, 945 F.2d at 154 (quoting *Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987) (citing *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 977 (D.C. Cir. 1985))).

> In evaluating the degree of injury, it is important to remember that "[t]he key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The

11

> possibility that adequate compensatory or other corrective relief
> will be available at a later date, in the ordinary course of litigation,
> weighs heavily against a claim of irreparable harm."

*Id.* (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (quoting *Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir.1958))).

The Board's first stated concern — that a juvenile court judge may have to be removed if this Court's order is later reversed — is not a harm to the Board at all. As Plaintiffs note, if Tracie Hunter is certified the winner after the recount, is seated, but is later removed, there is no harm to the Board or its members. Thus, this factor does not weigh in favor of granting the stay.

The Board's second stated concern — that it risks sanctions and the possible removal of Board members because they would be acting in a manner contrary to the finding of the Ohio Supreme Court in *Painter*, is speculative at best. The result of *Painter* was a writ of mandamus against the secretary of state that compelled her to rescind certain directives. The Board does not explain how following this Court's order could result in sanctions from the Ohio Supreme Court when the Board was not even a party to the *Painter* case. Further, the *Painter* court recognized that the secretary of state has a duty to instruct election officials on the applicable requirements of federal election law "as well as federal court orders that are applicable to them." *Painter*, 128 Ohio St. 3d at 28.[3] The constitutional issues before this Court were not before the Ohio Supreme Court in *Painter*, and that court's "resolution of state-law issues does not resolve the

---

[3] The writ issued in *Painter* compelled the secretary of state to issue new directives relevant to the Board's review of contested provisional ballots that "are not subject to the consent decree in *Northeast Ohio Coalition for the Homeless.*" *Painter*, 128 Ohio St. 3d at 33. Thus, there is nothing whatsoever in *Painter* that contradicts this Court's order that the Board comply with the *NEOCH* Consent Decree and review any *NEOCH* ballots on which the voter did not complete or properly complete and/or sign the provisional ballot application as is required by the decree.

12

constitutional dispute properly before [this federal] court." *Hunter*, 635 F.3d at 233. Because the Board was not a party to *Painter*, and because that case involved state law issues whereas the instant case has resolved federal constitutional questions, it is unlikely that the Board would be subject to sanctions from the Ohio court for complying with this federal Court's order.

Nor has the Board pointed to any proof that suggests the secretary of state would remove the Board members for complying with this Court's order. The secretary of state filed an amicus brief in the Court of Appeals and a Brief in Support of En Banc Review. In neither of these filings did the secretary of state threaten Board members with removal.

### C. Injury to Others if Stay is Granted and Consideration of the Public Interest

Although it acknowledges that "this case has lasted too long," the Board asks this Court to further delay resolution by staying its judgment and order. It does so on the stated premise that "the public interest is in defending Ohio's election procedures and correctly and finally determining the outcome of the November 2010 election."

The Court disagrees that staying enforcement of its February 8, 2012 order will advance this stated public interest. To the contrary, further delaying the outcome of the election will harm the public. As the Sixth Circuit stated, "counting the ballots of qualified voters miscast as a result of poll-worker error may enhance '[c]onfidence in the integrity of our electoral processes[, which] is essential to the functioning of our participatory democracy.'" *Hunter*, 635 F.2d at 244-45 (quoting *Purcell v. Gonzalez*, 549 U.S.1, 4 (2006)).

The Board also states that a stay is warranted because it is uncertain whether there will be further proceedings in this Court on the due process issue. The Court does not intend further proceedings on the due process issue for two reasons: first, the February 8, 2012 judgment and

13

order resolved all pending matters before the Court and closed the case; second, the Board's appeal has divested this Court of any jurisdiction it might have retained.  Thus, there is no uncertainty regarding Plaintiffs' due process claim that would warrant a stay of enforcement of this Court's judgment.

Finally, in its reply memorandum in support of their motion for stay, the Board informs ths Court of two new pieces of information.  First, the Sixth Circuit has scheduled the case for mediation on March 26, 2012.  The Board fails to note that the Sixth Circuit routinely schedules mediation conferences in civil appeals.  That the Circuit has scheduled a routine telephonic mediation is not an indicator of the Board's intention to quickly resolve the matter without judicial involvement.  Second, the Circuit has issued an accelerated schedule for the hearing on the case, and the case will be fully briefed no later than the beginning of June.  This Court will not presume how much time will be required for the Circuit to resolve the appeal, and that the Circuit has accelerated the parties' briefing schedule does not obviate the need to bring the election to finality.

## III.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Stay Pending Appeal (Doc. 202) is

DENIED.

IT IS SO ORDERED.


_____s/Susan J. Dlott_____
Chief Judge Susan J. Dlott
United States District Court