# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **TRACIE HUNTER, et al.,** | : | **Case No. 1:10-cv-820** |
| | : | |
| **Plaintiffs,** | : | |
| | : | **Chief Judge Susan J. Dlott** |
| **vs.** | : | |
| | : | **PLAINTIFF HUNTER'S MOTION** |
| **HAMILTON COUNTY BOARD OF** | : | **FOR EQUTABLE RELIEF** |
| **ELECTIONS, et al.** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

Plaintiff Judge Hunter preserved her right to request additional equitable relief in this case (Doc. 196) and now requests and order awarding Judge Hunter back pay and benefits from January 1, 2011 through May 25, 2012, the date she was sworn in as the duly elected Judge for the Juvenile Court.

This Court found that "[t]he Hamilton County Board of Elections violated provisional voters' rights to equal protection under the law when, in determining whether provisional ballots were cast in the wrong precinct because of poll-worker error, it considered evidence of the location where the provisional ballots were cast for some, but all, provisional ballots cast in the wrong precinct." (Order Doc. 199). As a result of the Hamilton County Board of Election's constitutional violations, Judge Hunter was delayed in her ascension to the Hamilton County Juvenile Court Bench for 17 months. The Hamilton County Board of Elections delayed certifying the election results until May 17, 2012. When the Board certified the election results it certified that Tracie M. Hunter was "duly elected Judge, Ct. of Common Pleas-Juvenile Division for the full term commencing January 1, 2011 (Certificate of Election, Exhibit A). During that

17 month delay Judge Hunter lost $170,000 in wages and an unknown amount of money in benefits and now asks to be made whole.

This Court has equitable power to order Defendants to restore Judge Hunter to the position she would have been in had the Board not violated the Constitution and certified the election results prior to the term of office commencing on January 1, 2011.  The equitable remedies awarded under both section 1983 and Title VII have the goal of making persons whole for injuries suffered on account of unlawful employment discrimination. *See, e.g., Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (holding that courts have wide discretion to exercise their equitable powers to fashion the most complete relief possible).  Back pay is presumptively favored as a make-whole remedy and, absent exceptional circumstances, should be awarded to successful employment discrimination plaintiffs. *Rasimas v. Michigan Department of Mental Health,* 714 F.2d 614, 626 (6th Cir.1983), *cert. denied,* 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984). The back pay award should completely redress the economic injury the plaintiff has suffered as a result of discrimination. It should include the salary, including any raises, which plaintiff would have received but for the discrimination, as well as sick leave, vacation pay, pension benefits and other fringe benefits she would have received but for discrimination. *Id.* at 626-27; *see also Shore v. Federal Express Corp.,* 777 F.2d 1155, 1159 (6th Cir.1985).

Officer holders who have to litigate their right to claim the elected seat have a right to request back pay.  See, *Flack v. Graham*, 453 So. 2d 819 (Fla. 1984) where a judge litigated her right to the elected seat for four years before successfully winning an election contest.  The Florida Supreme Court held that the person holding legal title to the elected position, i.e., the

Plaintiff, was entitled to back pay with interest even though she did not perform services over that time. The Court found it was in the public interest to award back pay, noting that:

> the probability of a lengthy election challenge may induce challengers to forego litigation because their victory may be monetarily hollow. Although compensation may not be a major incentive to public officers, it is a factor which may preclude rightful holders of office from seeking to remove unlawful holders of office.

*Id*. at 821. The same can be said for Judge Hunter. She was the legal holder of the Juvenile Judge title, a judgeship that commenced on January 1, 2011. In Ohio, "[t]he compensation of these constitutional judges is attached to the office, not to its occupant. That compensation does not vary with the amount of service rendered by the judicial occupant, nor depend upon the time required in its performance." *Zangerle v. State ex rel. Walther*, 115 Ohio St. 168, 172-73, 152 N.E. 658 (1926).

Finally it should be noted that Judge Hunter attempted to obtain relief directly from the Ohio Supreme Court, who pays her salary. However the Ohio Supreme Court declined to award her back pay. (Exhibit B (request) and Exhibit C (denial)).

## CONCLUSION

Plaintiff Judge Hunter respectfully requests the Court order defendant to award her back pay and benefits from January 1, 2011 through May 25, 2012.

Respectfully submitted,

/s/ Jennifer L. Branch
Jennifer L. Branch #0038893
Trial Attorney for Plaintiff Hunter
GERHARDSTEIN & BRANCH CO. LPA
Alphonse A. Gerhardstein #0032053
Attorney for Plaintiff
432 Walnut Street, Suite 400
Cincinnati, Ohio 45202
(513) 621-9100

(513) 345-5543 fax
jbranch@gbfirm.com
agerhardstein@gbfirm.com

### CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2013, a copy of the foregoing pleading was filed electronically.  Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.  I further certify that a copy of the foregoing pleading and the Notice of Electronic Filing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically.

/s/ Jennifer L. Branch

4